STATE of Missouri,
Plaintiff–Respondent,

v.

Charlie G. KING, Defendant–Appellant.

No. 52671.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 1, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 15, 1988.

**48**

Doris Gregory Black, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his convictions by a jury of kidnapping, armed criminal action and unlawful use of a weapon. He was sentenced to seven years, twenty years and two years respectively, the sentences to be served concurrently. He challenges the convictions on seven grounds, none involving the sufficiency of the evidence. Defendant was acquitted of a fourth charge—attempted rape.

The victim was a student at St. Louis University. On her way from the library to her residence hall a man holding a knife ordered and then forced her into a parked car. This was observed by a fellow student who alertly memorized the license number and a description of the vehicle. That student immediately called the campus police. Once in the car the assailant put the knife down as he started the car and the victim grabbed it and tried to open the car door. The assailant accelerated causing the door to slam shut and a struggle for the knife ensued with the assailant prevailing. The assailant told the victim he intended to kill her, pointed the knife at her, ordered her onto the floor of the vehicle and directed her to remove her pants. The victim went to the floor and pulled her pants down to her ankles. After a short ride the victim succeeded in opening the car door and fell to the pavement carrying with her a book bag which she had been carry-

ing. Throughout the encounter she observed the assailant.

The victim ran down the street and encountered two other students. Campus police, alerted by the prior call of the abduction, quickly located the three students and were shortly joined by City police. In the meantime the City police dispatcher broadcast the fact of the abduction, the description of the vehicle, the license number, and the name and address of the owner. The address was in close proximity to the University. Two officers went immediately to that address and parked. Within five to ten minutes the described vehicle entered the parking lot. Defendant was the driver of the vehicle. He was also the owner. He was immediately arrested and searched. Defendant was carrying an open pocket knife in his boot, and was wearing a baseball cap. On the floor of the car under the driver's seat the police found a blue knit pullover cap containing the victim's wallet, glasses case, symphony ticket stubs and other personal property. These had been in the book bag when the victim left the library.

The victim, the student who observed the abduction and one of the students who first encountered the victim were immediately taken to the parking lot. The student who observed the abduction made a tentative identification of the defendant as the abductor. When the baseball cap was removed and the pullover cap substituted, the witness made a positive identification. The victim subsequently made a tentative identification of the defendant while wearing the baseball cap but stated that was not the cap he was wearing. When the pullover cap was substituted, she immediately made a positive identification. At the time of his arrest, defendant stated, "I suppose you're going to tell me I was wearing two hats." Both witnesses identified defendant at trial. At the parking lot the victim also identified the knife, the automobile, and her personal belongings found in the defendant's vehicle. The victim's fingerprints were found on the inside of the passenger window of defendant's car.

The abduction occurred shortly after nine p.m. The 911 call from campus security to the city police occurred prior to 9:23 p.m., the City dispatcher's first report went out at 9:23 p.m. Prior to defendant's arrest the dispatcher stated the victim described the assailant as "a black male, 35 to 45, medium build, wearing a dark knit cap." At 9:36 p.m. police reported to the dispatcher that the defendant had been arrested and by 9:39 p.m. the police were on their way to the parking lot with the victim, a drive of less than five minutes. The identifications were made within 45 minutes of the abduction.

Defendant produced a series of character witnesses and himself in defense. His testimony was that he was home alone on the evening in question and was sleeping. At approximately 11 p.m. he awoke and went to a nearby store. Upon his return he was arrested. He denied that the victim had been in his vehicle and asserted that her belongings and the pullover cap had been planted by the police. The defense attempted to explain the victim's fingerprints as having been put there by the victim when she was examining the car at the parking lot. The thrust of defendant's testimony was that the victim, the three witnesses to her plight, four patrol officers, and the evidence technician had lied about the time of the occurrence. The state introduced in rebuttal the tape of the 911 calls and the dispatcher's broadcasts which contained the times involved in the incident.

█ Defendant first challenges the identifications by the victim and the witness to the abduction as based upon an unduly suggestive procedure at the parking lot. Specifically defendant asserts that the identifications were based solely upon the blue pullover cap. The courts have consistently upheld one-on-one identifications made shortly after the commission of the crime as a reasonable means to provide a basis for immediately charging or releasing the suspect. *State v. Bynum,* 680 S.W.2d 156 (Mo. banc 1984) [1–4]; *State v. Williams,* 717 S.W.2d 561 (Mo.App.1986) [5]. Both witnesses here tentatively identified the defendant while wearing the cap he wore when arrested but both expressed some doubt because the cap was different. There was nothing unreasonable or unduly suggestive about placing on defendant's head a cap found in his possession at the time of his arrest which matched the description given by both witnesses of the cap he was wearing at the time of the offense forty-five minutes earlier. The thrust of defendant's argument is that a witness identification must be based upon facial or physical characteristics only. Such is not the law. Clothing is an important part of the overall picture upon which an identification is based. *State v. Pettit,* 719 S.W.2d 474 (Mo.App.1986) [13].

Defendant relies upon certain aspects of the testimony of each of the witnesses as demonstrating that each one's identification was based solely on the pullover cap. We find that a complete reading of the testimony reflects that both witnesses strongly believed defendant to be the abductor without the pullover cap and were positive about his identity with the cap. We find nothing unduly suggestive about the identification procedure.

█ If there was any suggestiveness it was more than overcome by the reliability of the identifications. Reliability is the linchpin in determining the admissibility of the identification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) S.Ct. [3, 4]; *State v. Williams, supra.* Utilizing the five part test set forth in *Manson, supra,* S.Ct. [5], it is clear that the victim had considerable opportunity to view her abductor in a setting where her attention was necessarily keen. Her description immediately after the incident was essentially accurate, her degree of certainty at the confrontation was high, and the confrontation occurred almost immediately after the crime. The witness to the abduction had a lesser time to observe defendant but it is obvious he had an extremely high level of concentration as evidenced by his memorizing the license number and his immediate call to the police. His description of defendant was general but accurate, he was certain of his identification and the confrontation occurred im-

mediately after the incident. Further, it is dubious, in view of the facts developed, that his identification, even if suspect, affected the outcome of the trial. We find no merit in defendant's challenge to the identifications.

Defendant next challenges, on double jeopardy grounds, his conviction for both kidnapping and armed criminal action and on the same grounds his conviction of armed criminal action and unlawful use of a weapon. The first contention has been fully answered contrary to defendant's position by *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), and we discuss it no further.

■ The double jeopardy clause protects against multiple punishments for the same offense. *State v. Horne*, 710 S.W.2d 310 (Mo.App.1986) [3]. It does not protect a defendant from punishment for more than one offense arising from the same set of facts if he has in law and fact committed separate crimes. *State v. Jackson*, 703 S.W.2d 30 (Mo.App.1985) [4, 5]. But that concept does not apply where proof of one crime supplies an essential element of another crime. In that situation the defendant may not be convicted and punished for both crimes. *State v. Richardson*, 460 S.W.2d 537 (Mo. banc 1970) [2]; *State v. Johnson*, 672 S.W.2d 158 (Mo.App.1984) [2, 3]; *State v. Leigh*, 662 S.W.2d 568 (Mo. App.1983) [2]. For example an assault utilized to supply the force to support a robbery conviction may not be separately punished in addition to the punishment for robbery.

Section 571.015, RSMo 1986, (armed criminal action) makes it a crime to commit a felony through the use of a dangerous instrument. Section 571.030, subd. 4 RSMo 1986, makes it a crime to exhibit, in the presence of another, any weapon capable of lethal use in an angry or threatening manner. It is, of course, possible to commit armed criminal action without exhibiting a weapon in a threatening manner. But in the case before us the essential element of the "use" of a dangerous instrument to commit the felony of kidnapping was established solely by the proof that defendant exhibited the dangerous instrument to the victim in a threatening manner. Defendant cannot be punished twice for that exhibition.[1]

■ The state does not challenge the concept set forth above. Rather it argues that the armed criminal action occurred when the victim was put into the automobile and the exhibiting occurred during the ride. We find two problems with this. First, the kidnapping was a continuing offense beginning with the abduction and continuing until the victim fell from the vehicle. The knife was the weapon utilized to abduct the victim and to effect her movement to another place. The armed criminal action charge was based upon the use of the knife to effect the kidnapping, which included both initial abduction and movement. The exhibition of the knife was the same conduct upon which the armed criminal action charge was based. Secondly, the jury instructions did not advise the jury of this separation of crimes and it had no basis for concluding that a different act was required to support the two offenses. The conviction for unlawful use of a weapon must be reversed.

■ Defendant objects to the failure of the trial court to remove a juror who during the trial conveyed to the court some difficulties in performing his duty. Defendant objected to removing the juror and substituting the alternate. This was probably because the difficulty expressed by the juror caused him to doubt he could vote for a conviction. The trial court expressed its willingness to remove the juror upon request of the defendant. Defendant has

---

1. *Missouri v. Hunter, supra,* allowed cumulative punishments for the "same" conduct where the legislature specifically authorizes such punishment. The armed criminal action statute (Sec. 571.015 RSMo 1986) specifically excludes from its application "felonies defined in sections ... 564.610 ... RSMo." Section 564.610 RSMo 1969, in effect at the time of the passage of the armed criminal action statute, was what is now Sec. 571.030 RSMo 1986. In passing the armed criminal action statute, the legislature did not authorize cumulative punishments for the same act covered by both Secs. 571.015 and 571.030, subd. 4.

waived the point. He cannot object at trial to the action he now contends the trial judge should have taken and assert on appeal that the trial court committed plain error in not taking the action. *State v. Clark*, 701 S.W.2d 546 (Mo.App.1985) [2].

 Defendant charges that the court erred in failing to direct a verdict on the attempted rape count. The jury acquitted defendant of that charge and the evidence to support that charge was relevant and admissible whether or not attempted rape was in the case. We find no prejudice.

■ Defendant next contends that the trial court erred in refusing to admit evidence gathered by defendant of the number of vehicles in the St. Louis area resembling his vehicle. Defendant offered nothing to tie any of these vehicles to this crime. The relevance of this evidence was far too tenuous to warrant its admission. The court was well within its discretion in refusing to admit it. *State v. Brown*, 718 S.W.2d 493 (Mo. banc 1986) [1]; *State v. Clark*, 711 S.W.2d 928 (Mo.App.1986) [4, 5].

■ Finally defendant contends the court erred in allowing the jury to hear the tape of the 911 and dispatcher calls after it had commenced its deliberations. The tape was originally played in rebuttal by the state but no transcript was available of its contents. Defense counsel requested that it be played again because she had difficulty understanding it. This was done. During deliberations the jury requested to hear the tape or see a transcript. Initially the court refused upon defendant's objection. Subsequently the jury made the request again. This time the court brought the jury back into the courtroom and played the tape one time. It is within the trial court's discretion to determine whether or not evidence should be furnished to the jury during its deliberations. *State v. Diercks*, 674 S.W.2d 72 (Mo.App.1984) [15, 16]. Other exhibits were furnished to the jury at the time of its initial request. The record reflects that the tape was not easily understood as evidenced by defendant's attorney's request that it be replayed at the time it was originally introduced. After two requests by the jury, the court allowed the tape to be played one time in the courtroom. We find no abuse of the court's discretion.

Judgment of conviction for unlawful use of a weapon is reversed, in all other respects the convictions are affirmed.

KAROHL, P.J., and KELLY, J., concur.