Jason IVY, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 59494.

Missouri Court of Appeals,
Western District.

Submitted Feb. 8, 2002.

Decided May 28, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Amy Marie Bartholow, State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

Before PAUL M. SPINDEN, C.J., P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

JAMES M. SMART, JR., Judge.

Jason Ivy appeals the denial, after an evidentiary hearing, of his motion to vacate judgment and sentence brought pursuant to Supreme Court Rule 24.035 in the Circuit Court of Boone County. The convictions sought to be vacated are for second degree felony murder, § 565.021, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986.

**Factual and Procedural Background**

Jason Ivy shot and killed his stepsister with a handgun. He was fifteen years old at the time. He explained that he had pointed the gun at his stepsister and pulled the trigger as a practical joke, believing the gun to be empty. Ivy was ultimately charged as an adult with murder in the second degree and armed criminal action. The second degree murder

charge was a charge of felony murder asserting that a death occurred in the course of the commission of the felony of unlawful use of a weapon. On April 10, 1989, Ivy entered guilty pleas on both charges and was sentenced to life imprisonment on the second degree murder charge and fifteen years on the armed criminal action charge.

Ultimately, Ivy filed a petition for federal habeas corpus relief in the United States District Court for the Western District of Missouri on October 26, 1990. Eight years later, United States District Court sustained Ivy's petition, finding that Ivy's plea was not knowingly and voluntarily entered and that Ivy's trial counsel had rendered constitutionally ineffective assistance. The District Court's decision was affirmed by the Eighth Circuit Court of Appeals in *Ivy v. Caspari*, 173 F.3d 1136 (8th Cir.1999). Ivy was allowed to withdraw his pleas of guilty.

On August 9, 1999, the State of Missouri filed a second amended felony information, again charging Ivy with first degree murder and armed criminal action. On November 17, 1999, Ivy entered pleas of guilty to a third amended felony information charging second degree murder (again a felony murder charge based on unlawful use of a weapon) and armed criminal action. Ivy was sentenced to twenty-five years in prison upon his guilty plea to felony murder and a concurrent forty-five years in prison for armed criminal action.

On February 14, 2000, Ivy timely filed a *pro se* motion to vacate, set aside or correct judgment or sentence. Appointed counsel timely filed an amended motion. Ivy included in his *pro se* motion a claim that his sentences placed him in double jeopardy because he could not be sentenced for both felony murder based on unlawful use of a weapon and for armed criminal action. This claim was not included in the amended motion. The amended motion alleged, in part, that Ivy's plea lacked a factual basis pursuant to Rule 24.02, in that it was never explained to Ivy that the felony underlying the second degree felony murder charge required the State to prove that Ivy knowingly intended to brandish a weapon in an "angry and threatening manner."

An evidentiary hearing was held on September 29, 2000. The motion court denied Ivy's motion on December 19, 2000, finding in part that Ivy understood that the charge of second degree murder was predicated on the act of unlawful use of a weapon and that he had discussed "that particular concept" with plea counsel. This appeal follows.

### Lack of Adequate Factual Basis for Guilty Plea

■ We turn first to Ivy's second point on appeal. Ivy contends that the motion court clearly erred in denying his 24.035 motion because his guilty plea to felony murder was invalid in that no adequate factual basis was shown to support the plea. Although the plea court asked Ivy whether he understood that the intent for felony murder was supplied by the underlying felony of unlawful use of a weapon, the court, he argues, never established what intent was required for that felony under § 571.030.1(4), *i.e.*, that he knowingly exhibited a weapon readily capable of lethal use in an angry or threatening manner, nor did the court establish that Ivy understood what intent was required or that Ivy possessed that intent.

### *Standard of Review*

■ Appellate review of the denial of a motion for post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k); *Antwine v.*

*State*, 791 S.W.2d 403, 406 (Mo. banc 1990). A judgment will be found to be clearly erroneous if, after review of the entire record, the appellate court is left with the definite and firm belief that a mistake has been made. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

### Analysis

 In Missouri, the plea court may not enter judgment on a plea of guilty until it makes a determination that there is a factual basis for the plea. Rule 24.02(e); *State v. Hunter*, 840 S.W.2d 850, 864 (Mo. banc 1992). A plea forms the factual basis for a guilty plea where it is voluntarily and understandingly made, as well as *unequivocal* as to the factual requisites necessary to establish every element of the offense. *State v. Shafer*, 969 S.W.2d 719, 734 (Mo. banc 1998). A factual basis is established where the information clearly charges the defendant with all elements of the crime, the nature of the charge is explained to the defendant, and the defendant admits guilt. *Rios v. State*, 848 S.W.2d 638, 640 (Mo. App.1993).

 A factual basis to support a guilty plea "is established if the defendant understands the facts recited by the judge or the prosecutor." *State v. Morton*, 971 S.W.2d 335, 340 (Mo.App.1998). So long as the defendant understands the nature of the charges against him, trial courts are not required to explain every element of the crime. *State v. Taylor*, 929 S.W.2d 209, 217 (Mo. banc 1996); *Franklin v. State*, 989 S.W.2d 678, 679 (Mo.App.1999). However, a guilty plea must be voluntary in a constitutional sense, and a plea cannot be voluntary in the sense that it amounted to an intelligent admission that he committed the offense unless the defendant re-

ceived "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Henderson v. Morgan*, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (*quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)). "[I]intent is such a critical element of the offense of second-degree murder that notice of that element is required." *Id.* at 647, n. 18, 96 S.Ct. 2253. Ivy points out in his brief that his first plea was vacated in part in federal court because the plea court misinformed him that his intent was irrelevant in the context of felony murder. *See Ivy v. Caspari*, 173 F.3d 1136, 1142–43 (8th Cir.1999). The information to which Ivy originally pleaded guilty charged felony murder in the second degree as a result of the perpetration of the felony of unlawful use of a weapon. Under Missouri law, the State was not required to prove that Ivy intended to kill his stepsister, but it was required to prove that he intentionally used the weapon in a manner violative of the statute. *See State v. Clark*, 652 S.W.2d 123, 127 (Mo. banc 1983); *State v. Rumble*, 680 S.W.2d 939, 943 (Mo. banc 1984) (defendant must have had the "requisite intent to commit or participate in the underlying felony").

The United States Court of Appeals concluded that the sentencing court believed Ivy's intent was irrelevant with regard to the second degree felony murder charge and the court conveyed that belief to Ivy. *Ivy*, 173 F.3d at 1143. The court found the colloquy at the time of the plea insufficient to establish that Ivy was advised that intent was an element of the underlying offense and, therefore, the court found, his plea could not have been knowingly and voluntarily entered.[1] *Id.*

---

1. In *Ivy v. Caspari*, the court stated:

The underlying felony in this case, unlawful use of a weapon, makes it unlawful to

In this appeal, Ivy argues that, again, the third amended information did not clearly charge him with all the critical elements of the crime and that the nature of the charge was not fully explained to him. According to Ivy, the plea court in this case merely confirmed that Ivy knew that intent to commit the underlying felony was required. The plea court did not confirm, he says, that Ivy specifically knew that a "knowing" intent was required—as opposed to a reckless or negligent intent—and failed to confirm the other critical element of unlawful use of a weapon, *i.e.*, that Ivy knowingly exhibited the weapon "in an angry or threatening manner."

Ivy makes the point that this time the plea court used the general word "intent" in the context of the underlying felony, but failed to explain what intent was required or what act Ivy allegedly committed. The underlying felony, unlawful use of a weapon, makes it unlawful to *"knowingly ... exhibit ... any weapon readily capable of lethal use in an angry or threatening manner."* § 571.030.1(4) RSMo 1986 (emphasis added). Following is the colloquy between the court and the defendant from this most recent plea hearing, which Ivy maintains failed to establish the requisite intent element of the underlying felony—unlawful use of a weapon:

[Q.]: Now, in connection with felony murder in the second degree, do you understand that one of the elements of that particular crime is that the homicide occurred as a result of the commission of another felony? Do you understand that?

[A.]; I understand Susan died because [sic] the felony.

[Q.]: Pardon?

[A.]: I understand Susan died because [sic] the other felony.

[Q.]: **Well, I'm going to ask my question again. Do you understand that the, what we call felony murder second degree is ... predicated or based upon the commission of another felony which specifically in this case is the unlawful use of a weapon? Do you understand that?**

[A.]: **I understand that.**

[Q.]: **And have you discussed that particular concept with your attorney ... ?**

[A.]: **Yes, sir.**

\* \* \*

[Q.]: **Do you understand that the intent in this particular case is supplied by what we call the other felony of unlawful use of a weapon?**

[A.]: **Yes, sir.**

[Q.]: **Do you understand that?**

[A.]: **Yes, sir.**

[Q.]: 'Cause once before you apparently did not understand that. And I want to be sure this time that you do understand it.

"knowingly ... exhibit ... any weapon readily capable of lethal use in an angry or threatening manner." Mo.Rev.Stat. § 571.030.1(4). Although the trial court correctly stated that the law did not require the State to prove that Ivy intended to kill his stepsister, *it did not advise Ivy that the State was required to prove that Ivy intended to commit the underlying felony.* This is more than a quibble, for although it might be argued that such an intent is manifested by the fact of pointing a handgun at another, intent is not to be presumed, and had the case gone to trial the State would have been put to its proof on this element of the offense. We conclude, therefore, that because Ivy was not advised that intent was an element of the underlying offense, his plea perforce could not have been voluntarily entered.

*Ivy*, 173 F.3d at 1143 (emphasis added).

[A.]: **I'm fully aware of all of the charges against me this time, sir.**

[Q.]: Do you understand that the second count ... alleges that on the 14th of April of 1988 again that you committed the felony of murder in the second degree charged in Count I, and those allegations are incorporated in this particular Count II, **and that you knowingly committed the foregoing felony of murder in the second degree by, with, and through the use and assistance and aid of a deadly weapon?** Do you understand in Count II that you are pleading guilty to a charge of armed criminal action?

[A.]: Yes, sir.

[Q.]: Did you in fact commit this offense with the use and by the use of a deadly weapon?

[A.]: Yes, sir.

\* \* \*

Comparison of this colloquy with the former one contradicts Ivy's argument that the sentencing court repeated its error in failing to assure that Ivy understood all the elements to which he was pleading guilty, especially the significance of the "intent" element. Although this colloquy also is not a model of clarity, there are two important differences between this and the former colloquy: (1) the court's emphasis on the relevance of Ivy's intent, and (2) the degree to which the court specifically questions Ivy and his plea counsel about Ivy's understanding as to the intent element of his crime.

In the first colloquy the court stated repeatedly that Ivy's intent with regard to the felony murder charge was irrelevant, i.e., "COURT: It doesn't matter what your intent was?"; "... it doesn't make any difference whether you intended to shoot her or not"; and "... the question of his intent is in no way involved in this case."

This time, the court did not make any similar statements that Ivy's intent was not relevant. To the contrary, this time the sentencing court questioned both Ivy and his plea counsel as to Ivy's full understanding of the charges against him and questioned plea counsel specifically about whether she had discussed with Ivy the matter of his intent with regard to his guilty plea:

[Q.]: [Plea counsel], have you discussed with your client the concept of felony murder second degree?

[A. Plea Counsel]: Yes, Your Honor.

[Q.]: Where certain intents are supplied by the commission of the other felony?

[A.]: Correct, Judge.

[Q.]: Do you believe that your client understands those concepts?

[A.]: I do. In that he understands that the intent that's required and the knowledge of the elements go to the Class D felony of unlawful use of a weapon and he does understand that he's admitting to those elements and that the death resulted from that underlying felony.

[Q.]: Mr. Ivy, do you understand that you are pleading guilty to a charge which alleges that you discharged a weapon? Do you understand that?

[A. by Appellant]: Yes, sir.

In denying Ivy's PCR motion, the motion court heavily relied upon the testimony of plea counsel at both the plea hearing and at Ivy's PCR motion hearing as evidence that his guilty plea was knowingly and voluntarily entered. The court found:

The trial court need not explain every element of the crime so long as the defendant understands the nature of the charged offense.... \* \* \* At the guilty plea ... Movant understood the charge of second degree murder was predicated on an act of unlawful use of a weapon and indicated that he had discussed

"that particular concept" with plea counsel. Plea counsel indicated that she explained the concept of felony murder with Movant and discussed with him that "certain intents are supplied by the commission of the other felony." She also told the court that Movant understood "that the intent that's required and the knowledge of the elements go to the Class D felony of unlawful use of a weapon and ... understand[s] that he's admitting to those elements and that the death resulted from that underlying felony." Movant then announced to the plea court, "I'm fully aware of the charges against me this time, sir." * * * [At the evidentiary hearing], plea counsel stated that, prior to Movant's plea, she and Movant had discussed the elements of unlawful use of a weapon and had specifically discussed the issue of intent. At the same hearing, Movant admitted that plea counsel communicated with him "pretty thoroughly...."

The motion court did not clearly err. In *Gaddy v. Linahan,* 780 F.2d 935, 944 (11th Cir.1986), the court stated: "Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime in question *at the plea hearing.* .... [F]or a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them." (emphasis theirs).

The record reflects that Ivy understood the issue of intent before he entered his guilty plea this time, in that the record clearly shows that Ivy had discussed with counsel issues of intent prior to his plea and that he understood the charges against him. At his guilty plea, Ivy announced that he was "fully aware of all the charges against [him] this time." With regard to the charge of murder in the second degree, Ivy understood that the charge of felony murder was predicated upon the offense of unlawful use of a weapon. Plea counsel testified that "with regard to second degree" murder, she and Ivy had discussed "the issue of intent and where it lies and what it means...." With regard to the issue of unlawful use of a weapon, plea counsel stated that she explained the elements of that offense to Ivy "[a]nd of course more specifically just the intent or knowledge required in that particular statute." Thus, the record reflects that Ivy had discussed issues of intent prior to his plea and that he understood the charges against him.

## Double Jeopardy

 In his first point on appeal, Ivy contends that the motion court plainly erred in denying his motion for post-conviction relief because the sentencing court violated his rights to be free from double jeopardy[2] when it accepted his guilty pleas and sentenced him for both felony murder based on the predicate felony of unlawful use of weapon *and* for armed criminal action, in that the face of the record clearly shows that the sentencing court had no power to enter the conviction or impose the sentence for armed criminal action since the felony of unlawful use of a weapon is the gravamen of the felony murder charge and double jeopardy precludes a conviction for armed criminal action based upon unlawful use of a weapon.

The State argues that Ivy's guilty plea waives his double jeopardy claim; that "the defense of double jeopardy is a personal defense and is not jurisdictional"; and that "double jeopardy is a personal

---

**2.** In violation of rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and § 556.041, RSMo.

right or privilege which is waived if not timely and properly asserted." We note, however, that the Missouri Supreme Court has held that a guilty plea does not necessarily foreclose all Rule 24.035 claims of double jeopardy. In *Hagan v. State*, 836 S.W.2d 459, 461 (Mo. banc 1992), the Court stated:

> [A] guilty plea does not waive a subsequent claim of a double jeopardy violation *if it can be determined from the face of the record that the sentencing court had no power to enter the conviction or impose the sentence.* We believe that the *record* that a reviewing court may consider in determining whether a double jeopardy claim can be considered on collateral attack *consists solely of the State's information or indictment and the transcript of a movant's guilty plea.*

(emphasis added).

In *Bass v. State*, 950 S.W.2d 940 (Mo. App.1997), this court reviewed the defendant's double jeopardy claim even though she failed to raise her double jeopardy argument in either her pro se or her amended motions for post-conviction relief and raised it for the first time on appeal. This court acknowledged that, generally, failure to timely raise a claim in the motion court constitutes a waiver of that claim, citing *Rost v. State*, 921 S.W.2d 629, 635 (Mo.App.1996), which held that a double jeopardy claim, even if otherwise valid, was waived where the movant had failed to timely raise it in his post-conviction motion. *Bass*, 950 S.W.2d at 945. Nevertheless, the court examined the merits of Bass's double jeopardy claim based upon its interpretation of the *Hagan* case, stating: "[I]t is settled that, even where a plea of guilty has been entered, a claim of double jeopardy is not waived if, *on the face of the record,* 'the charge is one which the State may not constitutionally prosecute.'" (emphasis added) *Id.* Thus, the

court was required to review the claim because the double jeopardy claim called into question the facial jurisdiction of the sentencing court. "In accordance with Hagan," the court determined, "we thus review the informations and the guilty plea transcript below to determine whether they reveal that the sentencing court had no power to enter the conviction or impose the sentence." *Id.* at 946 (citing *Hagan*, 836 S.W.2d 459). In the final analysis, the *Bass* court concluded that there was no indication of a lack of such power. *Id.*

Based upon this court's application of *Hagan* in *Bass*, Ivy skates by the contention as to waiver to the extent that the information and the guilty plea transcript in this case show that the sentencing court lacked power to enter the conviction and impose the sentence. Thus, this court is obligated to undertake that limited review.

▬▬▬ The third amended information to which Ivy pleaded guilty charged Ivy in Count I with felony murder predicated upon the unlawful use of a weapon *and* charged him in Count II with armed criminal action based upon the felony murder with which he was charged in Count I. The gravamen of Ivy's felony murder charge was the intent to commit the underlying felony of unlawful use of a weapon. *See State v. Coleman*, 949 S.W.2d 137, 142 (Mo.App.1997). At the time of its passage, the armed criminal action statute, § 571.015.4, expressly excluded its application to offenses now contained in the present unlawful use of weapon statute, § 571.030. *State v. Davis*, 849 S.W.2d 34, 44 (Mo.App.1993). In the armed criminal action statute, the legislature specifically prohibited cumulative punishments for the same act covered by both Sections 571.015 and 571.030(4). *State v. King*, 748 S.W.2d 47, 50, n. 1 (Mo.App.1988). The armed criminal action statute, § 571.015.4, specifically excludes from its application "felonies

defined in sections ... 564.610 ... RSMo." Section 564.610 RSMo 1969, in effect at the time of the passage of the armed criminal action statute, was what is now § 571.030, RSMo 1986, the "unlawful use of a weapon" statute. Thus, an armed criminal action charge may not utilize the crime of unlawful use of a weapon as the underlying offense. *State v. McKee,* 826 S.W.2d 26, 29 (Mo.App.1992); *Davis,* 849 S.W.2d at 44. When both the armed criminal action and unlawful use of a weapon convictions are based upon the "same conduct," cumulative sentences place the defendant in double jeopardy. *Davis,* 849 S.W.2d at 44.

Section 571.030.1(4), RSMo 1986 (unlawful use of a weapon), makes it a crime to knowingly exhibit, in the presence of another, any weapon readily capable of lethal use in an angry or threatening manner. In *State v. King,* where the defendant was convicted of unlawful use of a weapon and armed criminal action, the armed criminal action charge used the unlawful use of a weapon crime as the underlying offense. *King,* 748 S.W.2d at 50. The court determined in *King* that both the armed criminal action and unlawful use of a weapon convictions were based upon the "same conduct" and that, therefore, the cumulative sentences for both offenses placed the defendant in double jeopardy. *Id.* The conviction for "unlawful use of a weapon" was, thus, reversed. *Id.*

*King* established that armed criminal action may not be predicated upon the crime of unlawful use of a weapon. Here, the State argues that the armed criminal action charge was predicated upon felony murder and not unlawful use of a weapon. In this case, however, there is no felony murder charge without the act of unlawful use of a weapon. The intent to commit the underlying felony is the gravamen of the felony murder offense. *State v.*

*Coleman,* 949 S.W.2d at 142. The "underlying felony supplies the requisite *mens rea* for second-degree felony murder." *State v. Pembleton,* 978 S.W.2d 352, 356 (Mo.App.1998). See also *State v. Lassen,* 679 S.W.2d 363, 369 (Mo.App.1984), which states: "[I]t is the intent to commit the underlying felony, not the intent to commit the killing, which is the gravamen of the offense [felony murder]."

The State concedes that pursuant to § 571.015.4 unlawful use of a weapon may not serve as the predicate for armed criminal action, *see King,* 748 S.W.2d at 50, n. 1, but argues that nothing in § 571.015 indicates that second degree felony murder cannot be the predicate for armed criminal action. In support of its argument, the State points to § 556.041(1), which states "[w]hen the same conduct of a person may establish the commission of more than one offense, he may be prosecuted for each such offense" unless one offense is included in the other, as defined in § 556.046. Section 556.046(1) states that "[a]n offense is so included when [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Here, according to the State, armed criminal action and murder in the second degree required proof of different facts: (1) Ivy was charged with killing Susan Magruder (the second degree murder charge); (2) Ivy was also charged with committing armed criminal action, *i.e.,* taking a life with the use, assistance, or aid of a deadly weapon. § 571.015.1. Thus, the two offenses required proof of different facts, and Ivy's double jeopardy rights were not violated, the State argues. This argument side-steps the issue at hand, *i.e.,* whether the felony murder charge predicated solely upon the "unlawful use of a weapon" required proof of different facts from the armed criminal action charge. The predicate offense for

armed criminal action must be something *other than* unlawful use of a weapon. Here, it was not.

■ The double jeopardy protection against cumulative punishments is designed to insure that the sentencing discretion of courts is confined to limits established by the legislature. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Courts can impose multiple punishments for the same act where the imposition of the multiple punishments is specifically authorized by statute:

> [T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed.

*Albernaz,* 450 U.S. at 344, 101 S.Ct. at 1145.

The General Assembly has by statute precluded charging a defendant with unlawful use of a weapon and armed criminal action for the same act. The State concedes that it could not have charged Ivy with unlawful use of a weapon and armed criminal action in this case. Yet, the State argues that it is not a violation of double jeopardy in this case to charge the defendant with both felony murder and armed criminal action—even though the felony murder is predicated upon the unlawful use of a weapon charge, which (as already conceded) arose from the same act that resulted in the armed criminal action charge.

■ Under the felony murder doctrine, the underlying felony and the killing are parts of one continuous transaction. *Lassen,* 679 S.W.2d at 369. Therefore, the State's attempt to dissect the two and apply armed criminal action only to the felony murder must fail. Because the legislature has explicitly stated that armed criminal action may not be predicated upon unlawful use of a weapon, Ivy's conviction and sentence for armed criminal action in this instance violates his right to be free from double jeopardy, and the conviction and sentence for armed criminal action must be reversed. *See State v. King,* 748 S.W.2d 47 (Mo.App.1988).

**Conclusion**

With regard to Ivy's double jeopardy claim, Ivy's conviction and sentence on the armed criminal action charge must be vacated. Ivy's arguments with regard to the lack of a factual basis for the guilty plea as to the felony murder charge are without merit and that point is denied.

The denial of post-conviction relief as to the guilty plea for second degree felony murder is affirmed. The judgment of conviction for armed criminal action and the sentence thereon is vacated.

SPINDEN and HOWARD, JJ., concur.