STATE ex rel. Corey Ryan
GREEN, Petitioner,

v.

Jim MOORE, Respondent.

No. SC 85234.

Supreme Court of Missouri,
En Banc.

April 13, 2004.

Phebe A. La Mar, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrew W. Hassell, Asst. Atty. Gen., Jefferson City, for respondent.

LAURA DENVIR STITH, Judge.

Petitioner Corey Ryan Green is a prisoner at Northeast Correctional Center

serving two consecutive ten-year sentences based on his pleas of guilty to second-degree murder predicated on the felony of unlawful use of a weapon in a threatening manner and armed criminal action predicated on that same felony. Mr. Green filed a petition for writ of habeas corpus alleging that his conviction of armed criminal action violates the double jeopardy clause of the United States Constitution because it contravenes the proscription in section 571.015.4 against using his unlawful use of a weapon in a threatening manner as the predicate for an armed criminal action conviction.[1]

This Court agrees. The face of the record shows the gravamen of both his second-degree murder and his armed criminal action convictions was the felony of his unlawful use of a weapon, in contravention of the admonishment in section 571.015.4. Conviction of both offenses violated Mr. Green's Fifth Amendment right to be free from double jeopardy. Mr. Green's armed criminal action conviction is void, but he is remanded to the custody of the Respondent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 1998, Mr. Green argued with Tasha Stewart, his fiancée and the mother of his two children. She accused Mr. Green of having sex with her teenage sister. In response to the accusation, Mr. Green assembled a loaded shotgun, threatened to commit suicide, walked outside, and shot a round into the air. He then reloaded the gun. They continued to quarrel. At some point during the dis-

pute, he pointed the gun at Ms. Stewart and shot and killed her.

The State charged Mr. Green in a three-count information on April 16, 1998. The third count alleged that Mr. Green committed the felony of unlawful use of a weapon in violation of section 571.030.1(4), RSMo Supp.1997,[2] by "exhibit[ing], in the presence of one or more persons a shotgun, a weapon readily capable of lethal use, in an angry or threatening manner," resulting in the death of Ms. Stewart. Count I charged Mr. Green with murder in the second degree in violation of section 565.021.1(2), based on the perpetration of the felony of unlawful use of a weapon by exhibiting it in a threatening manner, as set out in Count III. Count II charged Mr. Green with armed criminal action in violation of section 571.015, based on the commission of second-degree murder as set out in Count I, which, in turn, was based on the felony of exhibition of a weapon that formed the basis of Count III.

After withdrawing his initial pleas of not guilty, Mr. Green pled guilty in 1998 to Counts I and II, the second-degree murder charge and the armed criminal action charge, and was sentenced to two consecutive ten-year sentences.[3]

In 2003, Mr. Green filed a petition for writ of habeas corpus alleging that in section 571.015.4 the legislature specifically prohibited making unlawful use of a weapon by exhibiting it in a threatening manner a predicate offense for armed criminal action. Therefore, the State could not convict him of both unlawful use of a weapon and armed criminal action. Yet, he ar-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Section 571.030.1(4), RSMo Supp.1997, was in effect at the time Mr. Green fatally shot Ms. Stewart. It has not changed in subsequent revisions to section 571.030.

3. As a result of Mr. Green's pleading guilty to Counts I and II, the prosecutor dismissed Count III.

gues, that is ultimately what the State did by convicting him of both second-degree murder and armed criminal action based on that murder, since the murder conviction was in turn based on the felony of his unlawful use of a weapon. Because double jeopardy prohibits imposing multiple punishments for offenses the legislature intended to punish only once, he argues he therefore is entitled to relief from his conviction for armed criminal action. Following a denial of relief by the circuit court and court of appeals, this Court issued a writ of habeas corpus and appointed counsel for Mr. Green.[4]

## II. DOUBLE JEOPARDY

### A. Guilty Plea Did Not Waive Double Jeopardy Claim.

■ This Court must first address whether Mr. Green can raise this claim by means of a petition for habeas relief where, as here, the claim he now raises was not raised in a motion for post-conviction relief under Rule 24.035 and resulted from a voluntary guilty plea.

■ "Habeas corpus relief is recognized and available under the Missouri Constitution, article I, section 12, and provided for in sections 532.000 *et seq.*, RSMo, and Rule 91 to challenge the legality of a person's confinement." *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 213 (Mo. banc 2001). It does not, however, act as a substitute for post-conviction remedies. As a result, in all but the most exceptional circumstances, "[i]f the defendant fails to raise such claims in post-conviction proceedings, the defendant waives them and cannot raise them in a subsequent petition for habeas corpus." *Id.* at 214. One of these exceptional circumstances is where movant asserts a jurisdictional defect.[5]

Moreover, this Court recognized in *Hagan v. State*, 836 S.W.2d 459 (Mo. banc 1992), that, while the general rule is that "'a plea of guilty voluntarily and understandably made waives all non-jurisdictional defects and defenses,'" *id.* at 461, the courts will recognize an exception to this general rule of waiver "if it can be determined from the face of the record that the sentencing court had no power to enter the conviction or impose the sentence." *Id.*[6]

4. The Court expresses its appreciation to Attorney Phebe La Mar, who represented Petitioner pro bono by appointment of the Court.

5. *See Brown v. State*, 66 S.W.3d 721 (Mo. banc 2002):

[A] petitioner may be entitled to relief on a claim not raised in a post-conviction motion, if the petitioner can assert either: (1) a claim of actual innocence or (2) a jurisdictional defect or (3)(a) that the procedural defect was caused by something external to the defense—that is, a cause for which the defense is not responsible—and (b) prejudice resulted from the underlying error that worked to his actual and substantial disadvantage.

*Id.* at 731.

6. Numerous other decisions of this Court, as well as decisions of the United States Supreme Court, similarly recognize that jurisdictional defenses are not waived by entry of

a guilty plea. *See, e.g., United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (so stating); *State v. Mitchell*, 563 S.W.2d 18, 23 (Mo. banc 1978) (stating "that jurisdictional defects and defenses are not waived by entering a guilty plea"); *Kansas City v. Stricklin*, 428 S.W.2d 721, 724–25 (Mo. banc 1968) (holding that "jurisdiction of the subject matter . . . in either a civil or criminal action may be raised at any stage of the proceedings, even after a plea of guilty, and for the first time in the appellate court"); *State ex rel. Dutton v. Sevier*, 336 Mo. 1236, 83 S.W.2d 581, 582 (1935) (noting, in a habeas corpus action, that, "[w]hile the court had jurisdiction of the crime charged against petitioner, it did not have jurisdiction to assess punishment in excess of that provided by law," and "[w]here . . . the record shows on its face that the court did not have authority to render the particular judgment which it did render, the judgment is void and subject to collateral attack").

In determining whether such a jurisdictional defect is evident on the face of the record, Missouri courts will consider "the State's information or indictment and the transcript of a movant's guilty plea." *Id.*

The State argues that *Hagan* was wrongly decided, and the exception to the general rule of waiver should apply to a claim of double jeopardy only in the case of successive prosecutions and not in the case of a claim of improper cumulative punishments following a guilty plea, such as occurred here. The State can cite to no prior court making this distinction, and this Court rejects it. *Hagan* itself concerned a guilty plea. As it stated:

> Beyond simply protecting defendants from successive prosecutions for the same offense after an acquittal or a conviction, the Fifth Amendment also prohibits multiple punishments for the same offense.... The prohibition against multiple punishments is "designed to ensure that the sentencing discretion of ... court[s] is confined to the limits established by the legislature."

*Hagan,* 836 S.W.2d at 462, *quoting, Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Mr. Green's claim of a jurisdictional defect is not waived.

### B. Predicating Armed Criminal Action on Unlawful Use of a Weapon.

Mr. Green argues that he was subjected to double jeopardy when he pleaded guilty to and was sentenced for both second-degree murder and armed criminal action because both convictions were predicated on the same felony of unlawful use of a weapon.

Where, as here, a double jeopardy claim is based on allegedly improper cumulative punishments for the same offense, the central issue becomes legislative intent. As the United States Supreme Court stated in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983),[7] there is no double jeopardy violation "[w]here ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct." *Id.* at 368–69, 103 S.Ct. 673. This is because, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S.Ct. 673. *Accord, State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc 1992) (applying *Hunter* to cumulative punishment case).

Here, Mr. Green does not claim that conviction of both second-degree murder and armed criminal action were barred by the general double jeopardy rules set out in section 556.041.[8] Rather, he claims that

---

**7.** In *Hunter,* a first-degree robbery charge supported the armed criminal action charge. *Id.* at 361–62, 103 S.Ct. 673.

**8.** Section 556.041 states:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

(1) One offense is included in the other, as defined in section 556.046; or

(2) Inconsistent findings of fact are required to establish the commission of the offenses; or

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

*Sec.* 556.041.

the legislature has enacted a specific statute, section 571.015, which prohibits punishment for both armed criminal action and unlawful use of a weapon by exhibition in a threatening manner. He then contends that this also prohibits the State in this circumstance from using second-degree murder as the predicate felony for convicting him of armed criminal action where, as here, unlawful use of a weapon was the predicate for the second-degree murder conviction. Thus, the parties agree that the dispositive issue is whether the legislature has prohibited conviction and sentencing for armed criminal action under section 571.015 based on the commission of an underlying felony, here second-degree murder, that is itself predicated on the felony of unlawful use of a weapon by exhibition in a threatening manner.

Missouri's armed criminal action statute, section 571.015, was enacted in 1977 and became effective in 1979. Section 571.015 states, in relevant part:

1. *Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action . . . .*

. . . .

4. ***The provisions of this section shall not apply to the felonies defined in sections*** *564.590, 564.610, 564.620, 564.630, and 564.640, RSMo.*

*Sec.* 571.015 (emphasis added). Subsection 4 of section 571.015 specifically prohibits a charge of armed criminal action from being based on any of the felonies defined in the five statutes listed therein. Among those felonies are those that were set out in section 564.610, which contained, *inter alia,* a prohibition against exhibiting deadly weapons "in the presence of one or more persons . . . in a rude, angry or threatening manner." *Sec.* 564.610, RSMo 1969.[9]

In 1978, the felony of exhibiting a weapon in a threatening manner was transferred from chapter 564 (Inchoate Offenses) to chapter 571 (Weapons Offenses) and renumbered as section 571.115.[10] In 1981, that renumbered section was repealed, and section 564.610's interdiction against exhibiting a weapon in a threatening manner was recodified as section 571.030.1(4). As recodified, it prohibited "[e]xhibit[ing], in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." *Sec.* 571.030.1(4), RSMo Supp. 1981. This language remained the same at the time of Mr. Green's crimes in 1998, and remains the same today, despite multiple other revisions to section 571.030. *See*

9. At the time section 571.015 was enacted in 1977, the five statutes listed in subsection 4 were codified in the 1969 Missouri Revised Statutes and the 1975 Supplement. The felonies in the sections it listed, other than section 564.610, prohibited possession of machine guns, *sec.* 564.590, RSMo 1969; mandated that firearms capable of concealment be marked with specific identifying information and governed other aspects of the sale of such firearms, *sec.* 564.620, RSMo 1969; addressed the issuance of concealed weapon permits, *sec.* 564.630, RSMo Supp. 1975; and prohibited the acquisition of firearms capable of being concealed that did not comply with section 564.620 or without a permit pursuant to section 564.630, *sec.* 564.640, RSMo 1969.

10. Of the other four statutes listed in subsection 571.015.4, section 564.590 became section 571.105; section 564.620 became section 571.120; section 564.630 became section 571.125; and section 564.640 became section 571.130.

*sec.* 571.030.1(4), RSMo Supp.1997; *sec.* 571.030.1(4), RSMo Supp.2003.[11]

The State acknowledges that the renumbering and recodification of the statutory sections listed in section 571.015.4, while confusing, are of no effect in determining whether double jeopardy applies to Mr. Green's conviction of armed criminal action and that unlawful use of a weapon by exhibiting it in a threatening manner is the charge on which defendant's murder conviction was predicated. It thereby follows that the State could not have convicted Mr. Green of both this unlawful use of a weapon under section 571.030.1(4), RSMo Supp. 1997, and armed criminal action under section 571.015, because subsection 4 of the latter statute bars use of this type of unlawful use of a weapon charge as a predicate for armed criminal action.

But, the State notes, the legislature has not prohibited use of felonies other than the weapons offenses listed in section 571.015.4 as predicates for armed criminal action. *See, e.g., sec.* 571.017 (armed criminal action may be based on convictions other than those listed in section 571.015.4); *State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999) (" '[w]here . . . the armed criminal action conviction rests upon some offense *other* than the unlawful use of a weapon, conviction and punishment in the same trial of both armed criminal action and unlawful use of a weapon for the same conduct does not offend . . . the principle of double jeopardy' " (emphasis added)).[12] And, here, at least nominally, Mr. Green's conviction for armed criminal action is based not on the unlawful use of a weapon charge, but on the second-degree murder conviction. As the latter conviction required proof of an additional element—a human death—than would have been required to convict defendant of unlawful use of a weapon in this case, the State argues, the fact that the felony of unlawful use of a weapon is the underlying offense on which the murder

---

**11.** *See sec.* 571.030, RSMo Supp.2003; *sec.* 571.030, RSMo 2000; *sec.* 571.030, RSMo Supp.1998; *sec.* 571.030, RSMo Supp.1997; *sec.* 571.030, RSMo Supp.1995; *sec.* 571.030, RSMo Supp.1993; *sec.* 571.030, RSMo Supp. 1981. The other felonies that, in 1977, had been addressed by the statutes referred to in section 571.015.4 were similarly generally incorporated into other sections of chapter 571, including sections 571.020.1(2), 571.050, 571.060.1(2), 571.080, and 571.090, as of March 1, 1998, the date Mr. Green shot and killed Ms. Stewart. *See secs.* 571.020.1(2), 571.050, 571.060.1(2), 571.080, 571.090, RSMo 1994.

Subsequently, the prohibition against machine guns in section 571.020.1(2) was moved to section 571.020.1(3) in 2002. *See sec.* 571.020, RSMo Supp.2003. And, although section 571.080 was later amended in 1998, it continues to govern the transfer of concealable firearms without a permit. *See sec.* 571.080, RSMo 2000. Finally, additional provisions pertaining to concealed weapon permits were passed in 2003. *See secs.* 50.535, 571.101, RSMo Supp.2003.

**12.** *Accord, State v. Flenoy,* 968 S.W.2d 141, 144–45 (Mo. banc 1998) (armed criminal action based on second-degree murder, where the murder was, in turn, based on the felony of first-degree robbery); *State v. Hodges,* 66 S.W.3d 83, 84 (Mo.App. W.D.2001) (armed criminal action based on second-degree murder, where no information was provided regarding the underlying felony); *State v. Dudley,* 51 S.W.3d 44, 47–48 (Mo.App. W.D.2001) (armed criminal action, second-degree murder, and second-degree burglary, where the underlying offense for armed criminal action was burglary); *State v. Gilmore,* 22 S.W.3d 712, 714–15 (Mo.App. W.D.1999) (armed criminal action premised on second-degree murder, where the underlying felony for second-degree murder appears to have been robbery but is not explicitly provided); *State v. Boyd,* 992 S.W.2d 213, 214–17 (Mo.App. E.D. 1999) (one count of armed criminal action based upon one count of second-degree murder and one count of armed criminal action based upon one count of second-degree murder).

charge is predicated can be ignored for double jeopardy purposes.

Again, this Court disagrees. Merely insulating the unlawful use of a weapon predicate by inserting a murder conviction between it and the armed criminal action conviction is insufficient to avoid the statutory proscription. Although the armed criminal action conviction is nominally based on the murder conviction, where, as here, the murder conviction was itself predicated on the felony of unlawful use of a weapon, it would elevate form over substance to say that the armed criminal action charge is not based on the felony of the unlawful use of a weapon.

Indeed, the pertinent murder statute states, in relevant part, that "[a] person commits the crime of murder in the second degree *if he: ... (2)[c]ommits ... any felony,* and, in the perpetration ... of such felony[,] ... another person is killed as a result of the perpetration ... of such felony." *Sec.* 565.021.1(2) (emphasis added). Thus, defendant's conviction of murder required that he had perpetrated the underlying felony of unlawful use of a weapon.

This is no doubt why the same argument the State now makes was recently rejected in *Ivy v. State,* 81 S.W.3d 199 (Mo.App. W.D.2002). As is the case here, Ivy had pled guilty to a charge of second-degree murder based on the felony of unlawful use of a weapon and a charge of armed criminal action based on the murder. He subsequently contested his sentence for armed criminal action, claiming it "placed him in double jeopardy because he could not be sentenced for both" crimes where the ultimate underlying felony was unlawful use of a weapon by exhibiting it in a threatening manner. *Id.* at 201. *Ivy* agreed, stating: "The double jeopardy pro-

tection against cumulative punishments is designed to insure that the sentencing discretion of courts is confined to limits established by the legislature." *Id.* at 208, *citing, Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). *Ivy* noted that the legislature had prohibited convicting a person of both unlawful use of a weapon and armed criminal action, and that, in the case before it, the predicate for the murder charge was the felony of unlawful use of a weapon: "The General Assembly has by statute precluded charging a defendant with unlawful use of a weapon and armed criminal action for the same act. The State concedes that it could not have charged [the defendant] with unlawful use of a weapon and armed criminal action...." *Id. Ivy* therefore rejected the State's argument that it could predicate armed criminal action on the murder conviction, stating:

> Under the felony murder doctrine, the underlying felony and the killing are parts of one continuous transaction. [*State v.*] *Lassen,* 679 S.W.2d [363,] 369 [Mo.App. S.D.1984].... Because the legislature has explicitly stated that armed criminal action may not be predicated upon unlawful use of a weapon, [the defendant's] conviction and sentence for armed criminal action ... violates his right to be free from double jeopardy, and the conviction and sentence for armed criminal action must be reversed. *See State v. King,* 748 S.W.2d 47 (Mo.App.1988).

*Id.*[13]

Here, as in *Ivy,* although nominally Mr. Green's conviction and sentence for armed

---

**13.** While the State cites *State v. Gheen,* 41 S.W.3d 598 (Mo.App. W.D.2001), as holding that armed criminal action can be based on

second-degree murder where the latter is in turn based on unlawful use of a weapon in violation of section 571.030.1(4), double jeop-

criminal action were predicated on his conviction for second-degree murder, this murder charge was itself premised on the unlawful use of a weapon charge. Thus, in a very real sense, his conviction of armed criminal action was predicated on the felony of the unlawful use of a weapon. This is just what section 571.015.4 prohibits.

### III. CONCLUSION

In section 571.015.4, the legislature has barred predicating punishment of a defendant for armed criminal action on the felony of the unlawful use of a weapon by exhibiting it in a threatening manner pursuant to section 571.030.1(4). Because the essence of both the second-degree murder charge and the armed criminal action charge is the same underlying felony of such unlawful use of a weapon in violation of section 571.030.1(4), Mr. Green's conviction for both the underlying offense and for armed criminal action is contrary to the legislature's intent as set out in the statute; therefore, it violates his Fifth Amendment right to be free from double jeopardy. Thus, his armed criminal action conviction is void, and he is discharged from the effects of that conviction.[14] However, Mr. Green has not exhausted all of the sentences that he is currently serving and is not entitled to release. Therefore,

he is remanded to the custody of the Respondent.

**All concur.**

---

ardy was neither raised nor addressed in that case.

**14.** The Court rejects Mr. Green's claim that *his conviction and sentence for armed criminal action also violated his right to be free from double jeopardy under article I, section 19 of the Missouri Constitution.* That section is narrower than its federal counterpart. It provides, in pertinent part, "nor shall any person be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." *Mo. Const. art. I, sec. 19.* As this Court stated in *McTush:*

The Missouri Constitution offers no basis for [petitioner's] claim.... Since [petition-

er] was never acquitted by a jury, the double jeopardy clause of the Missouri Constitution is without application to his case. Any double jeopardy claim in the present case would, therefore, derive from the Fifth Amendment to the United States Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 ... [89 S.Ct. 2056, 23 L.Ed.2d 707] (1969).

*McTush,* 827 S.W.2d at 186.