**STATE of Missouri, Respondent,**

v.

**Wayne C. JOHNSON, Appellant.**

**No. WD 67567.**

Missouri Court of Appeals, Western District.

Feb. 19, 2008.

---

Melinda K. Pendergraph, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Wayne C. Johnson appeals the circuit court's judgment convicting him of unlawful use of a weapon, assault of a law enforcement officer in the second degree, and armed criminal action. Johnson asserts the circuit court (1) abused its discretion in allowing the State to introduce evidence of uncharged crimes into the rec-

ord, (2) committed plain error in convicting and sentencing him for armed criminal action and unlawful use of a weapon, and (3) committed plain error in denying him the opportunity to speak on his own behalf at sentencing. We affirm.

The evidence established that on the evening of January 9, 2006, Officer David Smith of the Sedalia Police Department received information that Johnson failed to report to the Cooper County Jail as required by a court order. Around 8:00 p.m., when Smith learned that Johnson was driving a maroon vehicle near the police station, Smith drove his patrol car to look for Johnson. When Smith saw the maroon vehicle, he activated his patrol car's lights, and Johnson pulled his vehicle over to the side of the road.

After Johnson pulled his vehicle over, Smith shined his spotlight on Johnson's car and stepped out of his patrol car. Smith then ordered Johnson to get out of the car with his hands up in the air. Johnson opened the driver's door halfway and put his hands out the door. Johnson then reached back inside the car and leaned over toward the glove compartment or the passenger side floorboard. Smith stood behind his patrol car's door, pulled his weapon out of his holster, and ordered Johnson out of the car again. When Johnson came out of his car, he faced Smith, pulled a gun from behind his back, and pointed the gun at Smith. Smith pointed his weapon at Johnson but did not fire his weapon because he was fearful of hitting a nearby passing vehicle or someone in it. Smith decided to take cover and went to the rear of his vehicle. Johnson got back in his car and drove away. Smith then returned to his vehicle and followed Johnson out of Sedalia. A camera mounted to the dashboard of Smith's patrol car filmed the entire confrontation between Smith and Johnson.

During Smith's pursuit of Johnson, Smith lost sight of Johnson's car and abandoned his pursuit. State Highway Patrol Trooper Chris Winter, however, upon learning about the pursuit from the dispatch, was able to locate Johnson's vehicle and continue the pursuit. Winter followed Johnson to the outskirts of Tipton, in Moniteau County. During the pursuit, Johnson lost control of his vehicle and crashed his vehicle into a fence and some trees. Winter shined his spotlight upon Johnson's car and got out of his patrol car. He pulled his pistol out of his holster and walked toward Johnson's vehicle. Winter told Johnson to get out of his car, to show his hands, and to get on the ground. When Johnson got out of his vehicle, Winter noticed that Johnson had a gun. Winter told Johnson to drop the weapon, but Johnson responded by pointing the gun in Winter's direction. Winter fired his pistol three to four times, and Johnson fired his weapon at Winter two times. Winter's patrol car was also equipped with a dashboard video camera. Winter's camera recorded Winter's pursuit of Johnson and recorded the audio but not the video of the shootout between Johnson and Winter.

After the shootout, other officers who had arrived at the scene were able to take Johnson into custody. Johnson had been shot in his front groin area. Officers found a .12 gauge shotgun round and several .357 caliber rounds in Johnson's pants pockets. Officers also found a handgun with the hammer cocked back in the front seat of Johnson's car and a shotgun on the passenger seat with its muzzle down.

The State charged Johnson with unlawful use of a weapon, assault of a law enforcement officer in the second degree, and armed criminal action for assaulting Smith in Pettis County. A jury found Johnson guilty, and the circuit court sentenced Johnson to concurrent terms of

seven years for unlawful use of a weapon, fifteen years for second-degree assault of a law enforcement officer, and ten years for armed criminal action. Johnson appeals.

In his first point, Johnson contends that the circuit court abused its discretion in allowing the State to present evidence and testimony about the police chase and shootout between Johnson and Winter in Moniteau County. Johnson asserts that such evidence constituted impermissible evidence of other crimes and that the prejudicial effect of such evidence outweighed any probative value. He claims that the State went too far by presenting evidence of Winter's dashboard video, a diagram of the Moniteau County crime scene, pictures of a rifle and ammunition found in Johnson's car that were unrelated to the crimes in Pettis County, and testimony from police officers about the events that occurred in Moniteau County.

The circuit court has broad discretion to admit or exclude evidence at trial. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). We will reverse a circuit court's ruling on the admission of evidence only if the circuit court has clearly abused its discretion. *Id.* Moreover, we review the circuit court's ruling for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived Johnson of a fair trial. *Id.*

We need not decide, however, whether or not the circuit court erred in admitting the evidence about which Johnson complains. Even if the circuit court erred in admitting all of the evidence concerning the subsequent chase and shootout between Johnson and Winter, Johnson suffered no prejudice from the admission of the evidence. "A trial court's admission of irrelevant and immaterial evidence, even of other crimes, will not be reversed on appeal absent a showing of prejudice." *State v. Simmons*, 944 S.W.2d 165, 178 (Mo. banc), *cert. denied*, 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). "Where the presumption of prejudice from the erroneous admission of evidence is overcome by the strength of the overwhelming evidence of guilt, reversal is not mandated." *State v. Beal*, 966 S.W.2d 9, 14 (Mo.App.1997); *see also Simmons*, 944 S.W.2d at 178, and *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The evidence of Johnson's guilt in this case is overwhelming and essentially uncontroverted.[1] Smith's dashboard video camera captured the entire confrontation between Johnson and Smith, and the video was played for the jury. Smith also testified to the exact facts displayed on the videotape. The evidence shows that, when Johnson got out of his vehicle, he pulled a pistol from behind his back and pointed it at Smith. Any potential error in the admission of evidence of other crimes, therefore, was without prejudice.

---

1. In *State v. Barriner*, 34 S.W.3d 139 (Mo. banc 2000), the Missouri Supreme Court said:
   When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. A finding of outcome-determinative prejudice "expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."
   *Id.* at 150 (internal citations omitted). The Barriner court noted, however, that when the evidence of the defendant's guilt is overwhelming and essentially uncontroverted, no outcome determinative prejudice results. *Id.* at 152.

In his second point, Johnson asserts that the circuit court plainly erred in sentencing him for both unlawful use of a weapon and armed criminal action in violation of the Double Jeopardy Clause. He contends that the legislature did not intend cumulative punishments for unlawful use of a weapon and armed criminal action. We disagree.

"Missouri courts have long enforced the rule that a defendant must raise a constitutional attack at the earliest opportunity, and his failure to do so preserves nothing for appellate review." *State v. Elliott*, 987 S.W.2d 418, 420 (Mo. App.1999); *see also State v. Couts*, 133 S.W.3d 52, 54 (Mo. banc 2004). "[T]he constitutional protection to be free from double jeopardy is a personal right or privilege which is waived if not timely and properly asserted at trial. . . ." *Elliott*, 987 S.W.2d at 420. Johnson concedes that he did not preserve his double jeopardy claim for our review. An exception exists, however, to the general rule that the claim is waived when the court "can determine from the face of the record that the court had no power to enter the conviction." *Id.* at 421. Under such circumstances, we may review the double jeopardy claim for plain error. *State v. Dennis*, 153 S.W.3d 910, 918 (Mo.App.2005). From the face of this record, we determine that the circuit court had the power to enter the convictions against Johnson for armed criminal action and unlawful use of weapon.

Protection against double jeopardy violations is found in both the United States and Missouri constitutions. *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006). Article I, section 19 of the Missouri Constitution, however, applies only to retrial after acquittal. *Kemper*, 191 S.W.3d at 50. Johnson's case does not concern a retrial after acquittal; therefore, article I, section 19 does not

afford him any protection against double jeopardy. The Fifth Amendment to the United States Constitution, however, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Fourteenth Amendment's Due Process Clause makes this amendment applicable to the states. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Fifth Amendment's Double Jeopardy Clause protects a defendant from not only successive prosecutions for the same offense after acquittal or conviction but also from multiple punishments for the same offense. *Peiffer v. State*, 88 S.W.3d 439, 442 (Mo. banc 2002).

"Double jeopardy analysis regarding multiple punishments is . . . limited to determining whether cumulative punishments were intended by the legislature." *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992) (citing *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). When the legislature specifically authorizes cumulative punishments under two statutes that proscribe the same conduct, cumulative punishment may be imposed against the defendant without violating the Double Jeopardy Clause. *Id.*

The armed criminal action statute provides:

1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action. . . .

. . . .

4. The provisions of this section shall not apply to the felonies defined in sec-

tions 564.590, 564.610,[2] 564.620, 564.630, and 564.640, RSMo.

§ 571.015, RSMo 2000. Subsection 4 of section 571.015 specifies that a conviction for armed criminal action cannot be predicated upon the felony of unlawful use of a weapon. In other words, "an armed criminal action charge may not utilize the crime of unlawful use of a weapon as the underlying offense." *Ivy v. State,* 81 S.W.3d 199, 207 (Mo.App.2002).

"Where, however, the armed criminal action conviction rests on some offense other than the unlawful use of a weapon, conviction and punishment in the same trial of both armed criminal action and the unlawful use of a weapon for the same conduct does not offend general cumulative punishment § 556.041 or the principle of double jeopardy." *State v. Davis,* 849 S.W.2d 34, 44 (Mo.App.1993); *see also State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999); *State v. McKee,* 826 S.W.2d 26, 29 (Mo.App.1992). In this case, Johnson's conviction for armed criminal action rests upon the offense of second-degree assault of a law enforcement officer, which is a Class C felony. *See* § 565.082.3, RSMo Supp.2006. The State charged Johnson with armed criminal action based upon the felony of assault of a law enforcement officer in the second degree, and the jury was instructed that it could find Johnson guilty of armed criminal action only if they found him guilty of assault of a law enforcement officer in the second degree.

Johnson claims that "[t]he State tried to avoid the double punishment prohibition, by adding a third charge, assault of a law enforcement officer, under Section 565.082." He relies on *State ex rel. Green v. Moore* and *Ivy v. State* in support of his claim that, by charging the assault, the State was trying to "end run the statute." In both *State ex rel. Green* and in *Ivy,* the defendants were charged with second-degree felony murder and armed criminal action, and, in both cases, the felonies underlying the second-degree murder charges were unlawful use of a weapon. *State ex rel. Green,* 131 S.W.3d at 804; *Ivy,* 81 S.W.3d at 200–01. Both courts found double jeopardy violations because the courts concluded that, ultimately, the armed criminal action offenses were predicated upon the unlawful use of a weapon offenses. The courts so concluded because the second-degree felony murder offenses were predicated upon the felonies of unlawful use of a weapon. *State ex rel. Green,* 131 S.W.3d at 809; *Ivy,* 81 S.W.3d at 208. In *State ex rel. Green,* the Supreme Court said:

> Although the armed criminal action conviction is nominally based on the murder conviction, where, as here, the murder conviction was itself predicated on the felony of unlawful use of a weapon, it would elevate form over substance to say that the armed criminal action charge is not based on the felony of the unlawful use of a weapon.

131 S.W.3d at 809.

Assault of a law enforcement officer, however, is not predicated on any underlying felony and can stand on its own without any reference whatsoever to unlawful use of a weapon. *State ex rel. Green* and *Ivy,* therefore, do not support Johnson's double jeopardy claim.

**2.** Section 564.610, RSMo 1969, prohibited a person from exhibiting deadly weapons "in the presence of one or more persons … in a rude, angry or threatening manner." The Supreme Court in *State ex rel. Green v. Moore,* 131 S.W.3d 803, 807–08 (Mo. banc 2004), noted that the offense has been recodified as section 571.030.1(4), RSMo, but said that "the renumbering and recodification of the statutory sections listed in section 571.015.4, while confusing, are of no effect" in analyzing double jeopardy claims.

Johnson argues that his single act of pointing a gun at Smith formed the basis for both the unlawful use of a weapon and the assault and that shows the State tried to contravene the legislature's prohibition against double punishment for the unlawful use of a weapon by charging armed criminal action and attaching it to an assault. Johnson fails to appreciate, however, that "the legislature has provided in § 556.041 that the same conduct of a person may establish the commission of more than one offense and he may be prosecuted for each of such offenses unless certain conditions apply." *McKee,* 826 S.W.2d at 29. A defendant may not be convicted of more than one offense if one offense is included in the other. § 556.041(1), RSMo 2000.[3] In construing § 556.041(1), our focus must be on the elements of the crimes according to statute and not on the evidence adduced at trial. *Id.; State v. Gottsman,* 796 S.W.2d 27, 30 (Mo.App. 1990).

"A person commits the crime of unlawful use of weapons if he or she knowingly ... [e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner[.]" § 571.030.1(4), RSMo Supp.2006. "A person commits the crime of assault of a law enforcement officer ... in the second degree if such person ... [p]urposely or recklessly places a law enforcement officer ... in apprehension of immediate serious physical injury[.]" § 565.082.1(6), RSMo Supp.2006. There are no common statutory elements in the two statutes. It is, therefore, disingenuous for Johnson to focus merely on the evidence adduced at trial to assert that his single act of pointing a gun at Smith formed the basis for both the unlawful use of a weapon and the assault.

We, therefore, conclude that no double jeopardy violations occurred in convicting Johnson of both armed criminal action and unlawful use of a weapon when the armed criminal action charge was not based on the offense of unlawful use of a weapon.

In his final point, Johnson contends that the circuit court erred in refusing to allow him to speak on his own behalf at sentencing unless he was under oath and subject to cross-examination and that such violated his rights to due process under the Fourteenth Amendment of the United States Constitution, article I, section 10 of the Missouri Constitution, and Rule 29.07(b)(1). Again, however, to preserve this issue for our review, Johnson had to raise his constitutional attack at the earliest opportunity, and this he did not do. His failure to assert his claim preserves nothing for our review. *Elliott,* 987 S.W.2d at 420. Johnson concedes that he did not preserve this issue for our review but requests that we review his claim for plain error under Rule 30.20.

A review for plain error pursuant to Rule 30.20 involves a two-step analysis. *State v. Robinson,* 194 S.W.3d 379, 381 (Mo.App.2006). First, we must determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). We must decide "whether, on the face of the claim, plain error has, in fact, occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001). "Plain errors are those that are evident, obvious and clear." *State v. Hawthorne,* 74 S.W.3d 826, 829 (Mo. App.2002). In the absence of evident, obvious, and clear error, this court should decline to exercise our discretion to review

---

**3.** None of the other exceptions noted in section 556.041 apply in this case.

the claimed error under Rule 30.20. If, however, we find plain error on the face of the claim, in our discretion, we may continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Dudley*, 51 S.W.3d at 53.

■ Johnson's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice. Although Johnson initially requested that he be allowed to make a brief statement before the circuit court entered its sentence, Johnson withdrew his request when the circuit court informed him that he would need to be under oath and would be subject to cross-examination. "Where a defendant affirmatively waives an objection, the fact that he later decided to object to the court's action is of no consequence and plain error review is not warranted." *State v. Burton*, 219 S.W.3d 778, 782 (Mo.App.2007).

■ Moreover, the record establishes that the circuit court complied with Rule 29.07(b)(1) when, before pronouncing sentence, it inquired of Johnson whether or not he had any legal cause to show why judgment should not be pronounced against him. *See also* § 546.570, RSMo 2000. "Allocution is granted so that the defendant has an opportunity to raise any infirmities in the sentencing procedure." *State v. Athanasiades*, 857 S.W.2d 337, 343 (Mo.App.1993). Johnson did not respond to the court's inquiry. We agree with Johnson that nothing in Rule 29.07(b)(1) requires that he be under oath or subject to cross-examination before being allowed to speak. Indeed, the better practice would be for the circuit court, before pronouncing sentence, to allow the defendant to speak without being under oath and subject to cross-examination. Even though the circuit court did not allow Johnson to speak earlier in the proceed-

ings without being under oath and subject to cross-examination, the circuit court later in the proceedings met the requirements of Rule 29.07(b)(1) when it inquired of Johnson whether or not he had any legal cause to show why judgment should not be pronounced against him.

■ We note that Fed.R.Crim.P. 32(i)(4)(A)(ii) requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]" In Missouri, however, Rule 29.07(b)(1) and section 546.570 merely require the court to ask the defendant whether or not he or she "has any legal cause to show why judgment should not be pronounced" against him or her. The circuit court met the requirements of Rule 29.07(b)(1) and section 546.570.

Johnson relies on *State v. Wise*, 879 S.W.2d 494 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995), to assert that the constitution grants defendants the right to address the court when it imposes sentence. In *Wise*, the Supreme Court noted:

In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the United States Supreme Court held that the constitution does not impose an obligation on courts to *offer* criminal defendants the opportunity to address the court prior to imposition of sentence. The Court did not address whether a constitutional right to allocution exists where a defendant affirmatively requests the opportunity to speak. Several federal circuit courts have held that the right of allocution is constitutionally protected where a criminal defendant affirmatively requests the right to speak. *United States v. Moree*, 928 F.2d 654, 656 (5th Cir.1991); *United States v. Jackson*, 923 F.2d 1494, 1496

(11th Cir.1991); *Ashe v. North Carolina,* 586 F.2d 334 (4th Cir.1978), *cert. denied,* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

*Wise,* 879 S.W.2d at 516. In this case, the circuit court gave Johnson the right to speak to whether or not he had any legal cause to show why judgment should not be pronounced against him, and Johnson did not respond. The circuit court did not deny Johnson any of his rights to allocution as required by Rule 29.07(b)(1) and section 546.570.

■ Finally, even if the circuit court failed to grant Johnson allocution, such is not fatal. "Where a defendant has been heard on his motion for new trial failure to grant allocution does not invalidate the judgment or sentence." *State v. Scott,* 621 S.W.2d 915, 918 (Mo.1981); *Athanasiades,* 857 S.W.2d at 343; Rule 29.07(b)(1). Johnson was heard on his motion for new trial by the circuit court.

We, therefore, affirm the circuit court's judgment convicting Johnson of unlawful use of a weapon, assault of a law enforcement officer in the second degree, and armed criminal action.

All concur.