**STATE of Missouri, Respondent,**

v.

**Walter L. ROSS, Appellant.**

**No. WD 69768.**

Missouri Court of Appeals,
Western District.

Aug. 25, 2009.

Margaret M. Johnston, Columbia, MO, for Appellant.

Mary H. Moore, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Walter L. Ross appeals the circuit court's judgment convicting him of first degree robbery, armed criminal action, unlawful use of a weapon, and possession of a controlled substance. Ross contends that the circuit court erred in overruling his Motion for Judgment of Acquittal at the close of the evidence because the State failed to prove he possessed the baggie of Ecstasy. He also contends that the circuit court abused its discretion when it restricted his cross-examination of the State's witness, Ashley Ross,[1] concerning a suicide attempt. We affirm.

In the light most favorable to the verdict, the evidence was that on November 7, 2007, Ross and Chasity Carter entered the Dollar General store in Mound City, Missouri. Ross purchased a pack of gum with Carter standing about a foot behind him at the cash register. At the conclusion of that transaction, Ross pointed a gun at the clerk and said, "Give me the money." The clerk had trouble opening the cash register, so the manager came to her assistance. The manager saw the gun, opened the cash register, and gave Ross the money. Ross and Carter left the store and ran toward an alley, which led to the street behind the store. Waiting on the street was a red Jeep Cherokee, license number 424 SJK, operated by Kimoni Russell and also containing Ross's niece, Ashley Ross. Ross and Carter ran to the car, entered, and left the scene.

A full description of Ross and the Jeep, including the license number, was provided to police by witnesses. Twenty five minutes after the robbery, Missouri State Highway Patrol Trooper Adam Rice spotted the red Jeep with license number 424 SJK. At that time, it was traveling north on I–29 while he was traveling southbound on the same highway. Trooper Rice activated his lights and sirens and made a U-turn in the median to pursue the Jeep. The Jeep travelled approximately another mile before it finally stopped.

After the Jeep was spotted by the trooper but, before they stopped, Ross threw the gun used in the robbery out of the vehicle. Ross also gave Ashley Ross a baggie containing Ecstasy pills. He told her, "Stuff the pills before we all go to jail." She obliged by hiding the baggie of drugs in her vagina. Eventually, all of the occupants of the car were arrested.

After a jury trial, Ross was convicted and sentenced on four counts. He received sentences of twenty years for robbery and ten years for armed criminal action to be served consecutively. He also was sentenced to four years for unlawful use of a weapon and two years for possession of a controlled substance, with those sentences to be served concurrently with each other and with the other sentences.

## Point I

In his first point, Ross contends that the circuit court erred in overruling his Motion for Judgment of Acquittal at the close of the evidence because the State failed to prove he possessed the baggie of Ecstasy. In *State v. McLane*, 136 S.W.3d 170 (Mo.App.2004), the court explained the requirements for finding a person guilty of possessing controlled substances:

"To convict a person of possessing a controlled substance, the state must prove that the person had conscious and intentional possession of the substance, either actual or constructive, and was

---

1. We refer to the appellant, Walter L. Ross, as "Ross" and refer to Ashley Ross by her full name.

aware of the substance's presence and nature." *State v. Belton*, 108 S.W.3d 171, 176 (Mo.App.2003). "Both possession and knowledge may be proved by circumstantial evidence." *State v. Camerer*, 29 S.W.3d 422, 425 (Mo.App.2000). "Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." *State v. Elmore*, 43 S.W.3d 421, 427 (Mo.App.2001).

*McLane*, 136 S.W.3d at 173.

In the case at bar, the State produced direct evidence of Ross's actual possession of the baggie of Ecstasy pills. At trial, Ashley Ross acknowledged that she had given the police a written statement, stating that her uncle handed her the pills. She testified at trial that her uncle told her, "Stuff the pills before we all go to jail."[2] This evidence of actual possession, however fleeting, taken together with his statement is decisive, if not dispositive, to Ross's point because Ross is exercising control over the drugs. Section 195.202.1, RSMo 2000, specifies that "it is unlawful for any person to possess or have under his control a controlled substance." Section 195.010(34), RSMo Cum.Supp.2008, declares that, to possess a controlled substance, a person must have knowledge of the presence and nature of the substance and have actual or constructive possession of it. The statute provides, "A person has actual possession if he has the substance on his person or within easy reach and convenient control." Thus, an exercise of control over the drugs is relevant to a determination of possession of the drugs.

If that exercise of control is also an attempt to hide or dispose of the drugs before detection, it may also demonstrate knowledge that possession was unlawful, inferring knowledge of the nature of the drugs. Here Ross's conduct and statement is both.

In *State v. Webster*, 754 S.W.2d 12 (Mo.App.1988), police officers, responding to a report that Webster was selling drugs, drove toward the scene when they observed Webster driving south as they proceeded north. *Id.* After a u-turn, they followed Webster and his passenger into a gas station. *Id.* As one officer approached the driver's door, Webster got out, and, as he did, the officer observed Webster drop a small brown glass vial and a shiny object onto the ground. *Id.* After both Webster and his passenger were detained, the officer searched the area near the driver's door and recovered a small brown glass vial of cocaine and a silver spoon. *Id.* On those facts, the court held that the State produced direct evidence of Webster's possession and control of the drugs through the officer's testimony that he saw Webster drop the spoon and vial of cocaine. *Id.* The court further found Webster's attempt to discard the drugs when encountered by the police was consistent with knowledge of the nature of the substance possessed and supports the verdict of guilty. *Id.* at 12–13.

In *State v. Camerer*, 29 S.W.3d 422 (Mo.App.2000), a passenger in a truck threw a backpack containing ingredients used to manufacture methamphetamine from a vehicle's window before an officer stopped it. *Id.* at 423–24. In responding to the defendant's claim of insufficient evidence to prove possession beyond a reasonable

---

**2.** She testified at trial that the pills were thrown back and forth between the front and back seat and that she could not remember who threw her the pills. She did not equivocate about her uncle's statement. Our review has us view the evidence in the light most favorable to the verdict and ignore all evidence to the contrary.

doubt, the *Camerer* court said, "Obviously, if the evidence was sufficient to support a finding that Appellant was the person who tossed the backpack from the pickup, the evidence was sufficient to support a finding that she had the backpack within easy reach and convenient control." *Id.* at 425. Further, the court found that "tossing the backpack from the pickup after [a] marked patrol vehicle appeared behind the pickup is consistent with knowledge that possession of the contents of the backpack violated the law." *Id.* at 426.

In *State v. McLane*, while the driver of a pickup truck was talking to a highway patrol trooper near the rear of the truck, the trooper observed McLane roll the passenger window down then later roll it back up. 136 S.W.3d at 172. A few minutes later the trooper observed a change purse about two feet from the passenger side of the truck. *Id.* The purse sat on top of recently fallen snow and was warm to the touch when the trooper picked it up. *Id.* It contained methamphetamine. *Id.* On these facts, the court found there was sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that McLane threw the change purse from the truck. *Id.* at 173. The court concluded that, in order to throw the change purse, McLane would have had to handle it and maintain control over it and thus be in actual possession of the substance. *Id.* The court went on to conclude that McLane's attempt to surreptitiously dispose of the change purse was sufficient to support a finding that McLane knew the nature of the contents and that possession of those contents violated the law. *Id.* at 174.

In *State v. Belton*, 108 S.W.3d 171 (Mo. App.2003), while the police pursued an automobile being operated by Belton's wife for traffic violations, Belton threw several plastic bags from the passenger window. *Id.* at 172–73. After the stop was effected, Belton was arrested for littering. *Id.* at 173. After a scuffle and flight from the scene, officers returned to the scene to recover the plastic bags and discovered they contained marijuana. *Id.* Relying on *Camerer*, discussed *supra* at pp. 4–5, this court found that the evidence was sufficient to support a finding that Belton had the bags within easy reach and control. *Id.* at 176. Otherwise, he could not have discarded them. *Id.* This court found Belton had actual possession. *Id.*

In the case at bar, Ross does not contend that he did not know the contents of the baggie, so we only concern ourselves with the sufficiency of the evidence of possession. As stated above, Ashley Ross acknowledged that she had given a statement to the police that Ross handed her the drugs; thus, Ross had actual possession. Ross argues that that is somehow insufficient because his possession was so transitory. We find relying on *Webster*, *Camerer*, *McLane*, and *Belton*, *supra* at pp. 4–6, that his possession, although fleeting, when coupled with his statement to his niece to conceal the drugs before they were detected, is sufficient evidence for a reasonable juror to find beyond a reasonable doubt that Ross had actual possession of the baggie of Ecstasy. The only distinctions that can be drawn between the cited cases and the case at bar is that the witnesses in the cited cases were police officers, while here the witness was Ross's niece, a passenger in the car, and that, instead of throwing the drugs from the car, Ross directed his niece to conceal them to avoid detection. These distinctions are of no consequence. Point I is denied.

## Point 2

■ Next, Ross contends the circuit court abused its discretion when it prohib-

ited him from cross-examining Ashley Ross concerning a suicide attempt while she was in jail awaiting trial. Ross claims this subject was a relevant and proper impeachment and cross-examination inquiry because it bore upon Ashley Ross's credibility. The State argues that Ross failed to properly preserve this issue because of an inadequate offer of proof. Ross disagrees. As it affects our standard of review, we consider the preservation of the complaint first.

"If an objection to the proffered evidence is sustained, the proponent must then make an offer of proof in order to preserve the record for appeal and to allow the trial court to consider further the claim of admissibility." *State v. Yole,* 136 S.W.3d 175, 178 (Mo.App.2004). An offer of proof must demonstrate three things: "(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *State v. Hirt,* 16 S.W.3d 628, 633 (Mo.App.2000). An offer of proof fulfills two objectives:

> (1) it "preserve[s] the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper," and (2) it allows "the trial judge to further consider the claim of admissibility" after having ruled the evidence inadmissible[.]

*State v. Bouser,* 17 S.W.3d 130, 141 (Mo. App.1999) (quoting *Evans v. Wal–Mart Stores, Inc.,* 976 S.W.2d 582, 584 (Mo.App. 1998)).

Here, Ross quite rightly did not rely on a summary of anticipated testimony but had the witness take the stand and answer specific questions under oath. However, after Ross elicited the proffered testimony, he did not address the offer further. He made no attempt to explain to the circuit court the purpose and object of the proffered testimony or attempt to address the admissibility of the proffered testimony. The immediate goal of the offer of proof is to educate the trial judge as to the admissibility of the proffered testimony.[3] Merely identifying the testimony is insufficient. Ross failed to show the purpose and object of the proffered evidence and failed to advance any argument as to the relevancy and admissibility of that testimony. Therefore, Ross failed to present a proper offer of proof and has not preserved this matter for appellate review.

Our review of this point then is limited to that accorded plain error. *State v. Middleton,* 998 S.W.2d 520, 529 (Mo. banc 1999), *cert. denied,* 528 U.S. 1167, 120 S.Ct. 1189, 145 L.Ed.2d 1094 (2000). Plain error review places a much greater burden on an appellant than when he asserts claims of error which were properly raised before the trial court. *State v. Hunn,* 821 S.W.2d 866, 869 (Mo.App.1991). To establish plain error appellant must prove first, an error was committed and that that error was evident, obvious, and clear, *State v. Bailey,* 839 S.W.2d 657, 661 (Mo.App. 1992), and, second, that failure to correct the error would produce a manifest injustice or miscarriage of justice. *State v. Brethold,* 149 S.W.3d 906 (Mo.App.2004). In this case, the error, to produce a manifest injustice, would have to be outcome determinative. *See Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002).

**3.** The conduct of a trial, like any human endeavor, will never be error free. However, the procedures adopted are designed to give the trial lawyer the opportunity and the obligation to bring any perceived error to the attention of the circuit court so that that court is afforded the opportunity to correct the error during the course of the proceedings.

It is important to note where in the proceedings that Ross sought to examine the witness concerning her suicide attempt. The State presented the witness and conducted direct examination; the defense had cross-examined the witness; the State had redirected; and the defense had re-crossed. The witness was allowed to step down from the witness stand, but, before she was excused, counsel for the defense asked the court if he might inquire about the witness's criminal convictions before the witness was excused. The court announced to the jury that counsel would "be allowed to ask a couple more questions." After an inquiry of a few questions, it was discovered that the witness had no criminal convictions, and the State asked for the witness to be excused. It was only then that defense counsel advised the court that he wanted to inquire into the witnesses purported suicide attempt. No explanation was given to the court concerning the relevancy of the inquiry. The court denied his request. The offer of proof was tendered, and the witness was excused. As previously indicated, counsel did not tender to the court any additional argument to the court, and the court remarked: "Offer of proof received. Court stands on its ruling."

The circuit court has broad discretion in regulating the extent and scope of cross-examination. *State v. Davis,* 186 S.W.3d 367, 373 (Mo.App.2005). In this case, the witness had been subject to a thorough and unrestricted examination both by the State and defense. The defense request to re-open cross-examination again and yet again (without any intervening direct examination) is the functional equivalent of recalling a witness. The circuit court is given broad discretion when ruling on a motion to recall a witness. *State v. Lee,* 841 S.W.2d 648, 654 (Mo. banc 1992). Thus, absent an abuse of discretion, the circuit court's decision to allow or deny the recall of a witness will not be disturbed on review. *Callicoat v. Acuff Homes, Inc.,* 723 S.W.2d 565, 569 (Mo.App.1987). The additional area in which Ross sought to inquire could have and should have been covered in his cross-examination or his recross-examination of the witness. This new area of inquiry was beyond the scope of the witness's previous direct and cross-examination. The circuit court was well within its discretion to disallow any further inquiry of the witness. *Id.*

■ Even disregarding the procedural posture of the court's ruling, the circuit court has broad discretion to determine the admissibility and relevance of certain questions and has the discretion to regulate the impeachment of a witness during cross-examination. *State v. Davis,* 186 S.W.3d at 373. We will not disturb the circuit court's ruling unless it abuses its discretion. *Id.* The circuit court abuses its discretion when its ruling is against the logic of the circumstances and is so arbitrary and unreasonable as to shock our sense of justice and indicates to us that the circuit court's decision lacked careful consideration. *State v. Johnson,* 207 S.W.3d 24, 40 (Mo. banc 2006), *cert. denied,* 550 U.S. 971, 127 S.Ct. 2880, 167 L.Ed.2d 1156 (2007). When we review the circuit court's ruling on the admission of evidence, we review for prejudice, not mere error, and will reverse only if the circuit court's error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 34.

■ To be admissible, evidence must be both logically and legally relevant. *State v. Barriner,* 111 S.W.3d 396, 400 (Mo. banc 2003). Logically relevant evidence is evidence which " 'tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or …

tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.'" *Id.* at 400–01 (quoting *State v. Tisius,* 92 S.W.3d 751, 760 (Mo. banc 2002)). Evidence is legally relevant if its probative value outweighs the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.* at 401.

Ross argues that Ashley Ross's attempted suicide was relevant in that it bore on her credibility and that matters bearing on credibility are always relevant. Even if such matters are always logically relevant, which is doubtful, it cannot be said that they are always legally relevant, as the circuit court must weigh its probative value against the many other factors listed above. If it is not both logically and legally relevant, it is inadmissible. The circuit court was certainly within its discretion to determine that additional impeachment examination would cause undue delay or was a waste of time and that that outweighed the probative value of the proffered testimony. Nothing in our review of the case indicates to us that the circuit court abused its discretion in bringing to an end the cross-examination of Ashley Ross. Point 2 is denied.

### Conclusion

Sufficient evidence supported Ross's conviction for possession of a controlled substance. The circuit court did not abuse its discretion in refusing to allow Ross to cross-examine Ashley Ross about her attempted suicide. We affirm the circuit court's judgment.

All concur.