STATE of Missouri, Respondent,

v.

Steven Arthur RIOS, Appellant.

No. WD 70581.

Missouri Court of Appeals,
Western District.

June 29, 2010.

Ellen H. Flottman, Columbia, MO, for appellant.

Shaun J. Mackelprang and Daniel N. McPherson, Jefferson City, MO, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Steven Rios ("Rios") appeals from the trial court's judgment finding him guilty of murder in the second degree and armed criminal action after a jury trial. Rios alleges that the trial court: (1) abused its discretion in denying a new trial based on juror separation; (2) abused its discretion in refusing to admit "use of force" reports; (3) plainly erred in permitting the testimony of the medical examiner on the cause or means of death; and (4) plainly erred in failing to declare a mistrial after a reference was made by a witness to a polygraph examination. We affirm.

## Factual and Procedural History

On June 5, 2004, college student Jesse Valencia ("Valencia") was found murdered in a field outside his apartment.[1] Valencia's throat had been slit. Valencia had been involved in a sexual relationship with Rios just prior to his death. During the relationship with Valencia, and at the time of Valencia's murder, Rios was employed as a Columbia, Missouri, police officer.

In 2005, Rios was tried and convicted of murder in the first degree and armed criminal action. The conviction was reversed, and the case remanded for a new trial in *State v. Rios,* 234 S.W.3d 412 (Mo. App. W.D.2007), due to the trial court's error in admitting two hearsay statements made by Valencia.

In December 2008, Rios was re-tried by a jury and found guilty of murder in the second degree and armed criminal action. The jury recommended sentences of life imprisonment· for murder in the second degree and twenty-three years imprisonment for armed criminal action. On January 16, 2009, the trial court imposed the sentences recommended by the jury and ordered that they be served consecutively. Rios appeals.

## Point I

For his first point, Rios contends that the trial court abused its discretion in denying Rios's motion for a new trial based on juror separation because two jurors discussed the evidence outside the presence of the other jurors while in a restroom. The trial court found that the facts and circumstances alleged by Rios did not constitute juror separation. We agree.

---

1. The facts are viewed in the light most favorable to the verdict. *State v. Donahue,* 280 S.W.3d 700, 701 (Mo.App. W.D.2009).

### Standard of Review

We review the trial court's denial of a motion for new trial for abuse of discretion. *State v. Stephens*, 88 S.W.3d 876, 881 (Mo.App. W.D.2002). "The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* The findings of the trial court when ruling on a motion for new trial on the grounds of juror misconduct are given great weight and will not be disturbed on appeal unless the trial court abused its discretion. *Grab ex rel. Grab v. Dillon*, 103 S.W.3d 228, 241 (Mo.App. E.D.2003).

### Analysis

Section 547.020(2)[2] provides that the trial court may grant a new trial "[w]hen the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case." If after the case has been submitted to the jury for deliberation and before a verdict has been reached, there is an opportunity that improper influence can be used on any juror, then a new trial is required. *State v. Cooper*, 648 S.W.2d 137, 140 (Mo.App. W.D.1983). The purpose of this statute is to "prevent any opportunity for misconduct by the juror or any suspicions of improper influences upon them." *Id.* at 139. "A 'sensible' and 'substantial' compliance must be considered sufficient to satisfy the statute." *Id.* at 140 n. 5.

Rios contends that juror separation as envisioned by section 547.020(2) occurred when two jurors, Alyssa Mitchell and Jane Newberry, spent five minutes together in a restroom outside the presence of the other jurors after Rios's case had been submitted. Rios contends that during this five minute interlude, Ms. Mitchell and Ms. Newberry discussed some of the evidence in the case, and that Ms. Newberry commented that she was confident that by virtue of her prayers, God was leading her in the right direction.

Rios's allegation first required the trial court to determine whether "juror separation" occurred. If separation did not occur, then section 547.020(2) was not implicated. If separation did occur, then the State was obligated to present evidence to overcome the rebuttable presumption of prejudice. *State v. Chambers*, 891 S.W.2d 93, 101 (Mo. banc 1994).

In considering whether the alleged conduct of jurors Mitchell and Newberry constituted "juror separation," the trial court heard testimony offered by the State from court marshal, Leslie Werner. Werner testified that the jury deliberation room contained two restrooms, which could only be accessed from within the jury deliberation room. Werner stated that the juror deliberation room was twelve by twenty feet and that the two bathrooms were at one corner of the room. Werner testified that he and his other officers were stationed outside the entry to the jury deliberation room for the entire six hours that the jury deliberated. Werner stated that no one else had contact with the jury during deliberations and that no jurors left the room during deliberations except for one smoke break. During the smoke break, one officer accompanied the jurors who wanted to smoke, one stayed with the jurors left in the deliberation room, and one officer stayed with the alternate jurors in a different room.[3]

**2.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

**3.** Rios and the State stipulated that if called, the other four marshals who participated in

Rios wanted to call juror Mitchell to testify. Rios acknowledged that the law prohibits juror testimony offered to impeach a jury verdict. *Strong v. State*, 263 S.W.3d 636, 643 (Mo. banc 2008). There is an exception to this rule, however, permitting juror testimony relating to juror misconduct occurring *outside* the jury room. *Id.* at 644.[4] Rios argued that even though the restrooms were located adjacent to, and were only accessible from, the jury deliberation room, the restrooms were nonetheless "outside" the jury room. The trial court rejected this argument and found that the restrooms used by the jurors during deliberations were inside the jury deliberation room. Rios does not contest this finding on appeal.

Rios also argued that notwithstanding the general rule prohibiting such testimony, jurors should be permitted to testify about conduct *inside* the jury deliberation room for the limited purpose of establishing "separation." Rios offers no legal support for this proposition and offers no meaningful rationale for distinguishing such testimony from other testimony impeaching the jury's verdict. The trial court concluded that juror testimony about conduct within the jury deliberation room was not admissible, even if offered for the limited purpose of establishing juror separation. We agree with this conclusion. In any event, Rios does not contest this conclusion on appeal.

The only conclusion Rios contests on appeal is the trial court's determination that a trip by two jurors, at the same time, to a bathroom *inside* a jury deliberation room does not constitute juror separation. Toward this end, Rios made an offer of proof as follows:

> Alyssa Mitchell would testify that she entered the women's restroom; that shortly thereafter, another juror we believe is Jane Newberry, from what we know about the jurors, but she just referred to her as Jane, entered after her; that they were alone in the women's restroom for nearly five minutes; that during that five minutes, they discussed the evidence of the case and how, specifically, the hair evidence and the probative value . . . and that even at one time . . . Jane told Alyssa Mitchell that she had prayed on it, and that as a result of her prayers, she was confident that God had—is leading her in the right direction.

Rios argues that these circumstances constitute "juror separation," relying on *State v. Jones*, 363 Mo. 998, 255 S.W.2d 801 (1953). *Jones* held that communication with a juror by the sheriff, who was also a witness, was improper and prejudicial. *Id.* at 806.

It is true that separation of the jury is generally deemed to have occurred when a *third party* communicates with a juror outside the presence of the rest of the jury. In *Jones*, for example, the court concluded that " '[p]rivate communications, possibly prejudicial, between jurors and third person, or witnesses, or the officer in

---

monitoring jury deliberations would establish each marshal's role during the deliberation process, that each made sure no third parties had contact with the jurors during deliberations, that each made sure no jurors spoke to one another during smoke breaks outside the jury room, and that no marshal was inside the jury room to prevent jurors from going into the bathroom together.

**4.** In *Fleshner v. Pepose Vision Institute*, 304 S.W.3d 81, 89–90 (Mo. banc 2010), the Supreme Court recognized another very limited exception to the general rule prohibiting a juror's testimony impeaching a jury verdict where a juror makes statements during deliberations that reflect an ethnic or religious bias or prejudice. Rios does not allege that this exception is applicable.

charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.'" *Id.* (quoting *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892)).

In contrast, however, it has been recognized that physical separation of jurors *from one another* does not violate section 547.020(2) as long as the jurors remain in custody and under surveillance. *State v. Murray,* 445 S.W.2d 296, 297 (Mo.1969); *see also State v. VanSickel,* 675 S.W.2d 907 (Mo.App. W.D.1984) (separation which occurred when one sheriff's vehicle carrying three jurors from motel to court fell behind other three vehicles by half a block not "true separation"); *State v. Cooper,* 648 S.W.2d 137, 140 n. 5 (Mo.App. W.D. 1983) ("[s]eparations as for use of the elevator, for sleeping arrangements, and use of toilet facilities must not be viewed as separations.")

Here, the State presented testimony that the jurors remained together in the jury room under custody and surveillance. There was no contact with any juror by a third party, and no contact among jurors outside the jury deliberation room. The trial court did not abuse its discretion in finding that no juror separation occurred. The trial court's ruling does not offend the logic of the circumstances, nor was it arbitrary or unreasonable. Though it may not be optimum for jurors to engage in conversations within the jury deliberation room that fail to include all jurors, it is implausible to suggest that every utterance by every juror in the jury deliberation room is heard by every other juror. We simply cannot conclude that conversations among some but not all jurors within the confines of the jury deliberation room rise to the level of juror separation. Point one is denied.

## Point II

For his second point, Rios asserts that the trial court abused its discretion in sustaining the State's objection to Rios's attempt to offer into evidence "use of force" reports. Rios asserts that the trial court's ruling prevented him from presenting a defense because the State presented evidence that Rios had been trained in the use of the unilateral vascular neck restraint, the means of restraint other evidence suggested might have been used to immobilize Valencia before his neck was slashed. Rios argues the use of force reports would have shown that Rios had never used the restraint technique as a part of his official duties as a police officer.

### Standard of Review

The trial court has broad discretion to admit or exclude evidence at trial. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). "'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Nelson v. Waxman,* 9 S.W.3d 601, 604 (Mo. banc 2000) (citation omitted). The trial court's evidentiary ruling will be affirmed "unless there is a substantial or glaring injustice." *Romeo v. Jones,* 144 S.W.3d 324, 332 (Mo. App.2004). Moreover, we review the trial court's ruling for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived Rios of a fair trial. *State v. Johnson,* 245 S.W.3d 288, 292 (Mo.App. W.D.2008).

### Analysis

The State put on evidence that Rios was trained to employ a technique known as the unilateral vascular neck restraint. The State also put on evidence that the bruises on Valencia's body were

consistent with a rough application of this technique. The State's witness, Lieutenant John White, testified on cross-examination that had Rios ever used this technique during the course of his official duties, it would have been documented in a use of force report. The State's witness, Sergeant Lloyd Simons, testified on cross-examination that, as Rios's immediate supervisor, he would have been notified had Rios used force during the exercise of his official duties and that a use of force report would have been generated. Sergeant Simons testified that he had never seen a report indicating that Rios had used the unilateral vascular neck restraint.

During the cross-examination of Sergeant Simons, Rios then sought to admit the actual use of force reports. The State objected to admission of the reports, arguing that the actual reports were irrelevant as Rios had already made his point that his supervisor had never seen a report indicating Rios's use of the subject restraint technique. In sustaining the objection, the trial court stated that the reports had "nothing to do with this case" and that it failed to see any relevance to the reports. The trial court advised Rios that he could ask the witness any question that he wanted. Rios resumed cross-examination on a different subject.

■■■■ Rios complains that the trial court excluded relevant evidence. Evidence must be both logically and legally relevant to be admissible. *State v. Ross*, 292 S.W.3d 521, 527 (Mo.App. W.D.2009). Logically relevant evidence " 'tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or ... tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.' " *Id.* at 527–28 (citation omitted). "Evidence is legally relevant if its probative value outweighs the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* at 528.

Rios relies on *State v. Ray*, 945 S.W.2d 462 (Mo.App. W.D.1997). In *Ray*, the trial court excluded evidence of events leading up to the day of a shooting at a drug house. The excluded evidence involved harassing telephone calls and threats from the victim and other men at the drug house within the forty-eight hours preceding the shooting. *Id.* at 466. This court reversed, finding that the evidence of prior harassment explained why Ray went to the drug house with a gun. *Id.* at 470. *Ray* is clearly distinguishable from the present case. In *Ray*, the prior events involved the parties and their actions leading up to the shooting. In this case, the excluded evidence bore no relationship to Valencia or to the events leading up to his death.

■■■■ In any event, it is unnecessary to address the relevance of the use of force reports in this case, as they were merely cumulative of other evidence already before the jury. *State v. Radford*, 646 S.W.2d 366, 367 (Mo.App. W.D.1982) (stating this court need not address relevancy where excluded evidence merely cumulative). "The trial judge has discretion over the admission of cumulative evidence, and this exercise of discretion will not be disturbed on review unless an abuse of discretion is clearly shown." *Id.* The record is clear that the testimony of Lieutenant White and Sergeant Simons provided the information Rios sought from the reports—that Rios had apparently never used the subject restraint technique in the performance of his official duties on the police force.

Similar to this case is *State v. Gateley*, 907 S.W.2d 212, 222 (Mo.App. S.D.1995), where the defendant in a sexual abuse case sought to admit the victim's diaries and

school records, which made no reference to abuse, to suggest that the victim had not experienced any problems or trauma. However, the victim had already testified that she did not keep any written record of the abuse and that she made good grades. *Id.* at 222. On appeal, the Southern District held that the trial court did not abuse its discretion in refusing to admit the evidence as it was cumulative. *Id.* at 222–23.

Here, the use of force reports duplicated evidence already admitted through the cross-examination testimony of Sergeant Simons and Lieutenant White. The evidence in the excluded reports was cumulative. As such, the trial court did not abuse its discretion in sustaining the State's objection to admission of the reports. Point two is denied.

### Point III

In point three, Rios claims that the trial court plainly erred in allowing the medical examiner, Dr. Valerie Rao, to testify that Valencia's wounds were consistent with someone employing a unilateral vascular neck restraint that rendered Valencia unconscious, dragging Valencia to the place where his body was found, and then cutting Valencia's throat while he was lying on the ground. On appeal, Rios complains that this testimony improperly opined about the ultimate issue of the cause of death and invaded the province of the jury. Rios did not, however, object to this testimony at trial.

### Standard of Review

Rule 30.20 authorizes us to review, in our discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted there from." Under Rule 30.20, plain error review involves a two-step process. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App. W.D.2001). First, we determine whether or not the claimed

error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). We must determine "whether, on the face of the claim, plain error has, in fact, occurred." *Dudley,* 51 S.W.3d at 53. Errors are plain if they are evident, obvious, and clear. *State v. Hawthorne,* 74 S.W.3d 826, 829 (Mo.App. W.D. 2002). In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Dudley,* 51 S.W.3d at 53.

### Analysis

At trial, Dr. Rao testified that Valencia's throat had been cut and blood was running down both sides of his neck. Dr. Rao testified that the blood flow indicated that Valencia was lying on his back when his throat was cut. The neck wound was about *four inches* long and was so deep that it nicked the spine. Dr. Rao testified that Valencia also suffered numerous bruises on his head, his right arm and wrist, his left wrist, his back, his chest, both shoulders, his left hip and groin area, and his right buttock and leg. Dr. Rao testified that Valencia had petechial hemorrhaging in his eyes consistent with being choked. Valencia had no defensive wounds. When asked whether the bruising and other injuries to Valencia's body were consistent with Valencia being rendered unconscious by a rough application of the unilateral vascular restraint technique, being dragged to the place where his body was found, and having his throat cut while he was lying on the ground, Dr. Rao answered affirmatively.

 Expert testimony is admissible where " 'it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence.' " *State v. Calhoun,* 259 S.W.3d 53, 58 (Mo. App. W.D.2008) (citation omitted). An expert in a criminal case may testify concerning her opinion on an ultimate issue, but the testimony must aid the jury and may not invade the jury's province. *Id.*

> The essential test of the admissibility of expert testimony is whether such testimony will be helpful to the jury. A guiding principle in applying this test is that expert testimony is proper '[i]f the subject is one with which lay jurors are not likely to be conversant.... On the other hand, if the subject is one of everyday experience, ... then opinion testimony is properly rejected.' In ruling on the admissibility of expert testimony, the trial court considers whether such testimony assists the jury or if it unnecessarily diverts the jury's attention from relevant issues.

*State v. Hayes,* 88 S.W.3d 47, 61 (Mo.App. W.D.2002) (citations omitted) (internal quotation marks omitted).

Rios argues that Dr. Rao's testimony invaded the province of the jury because she drew a conclusion that was reserved for the jury. Presumably, the conclusion to which Rios is referring is the cause or means of Valencia's death. However, Rios fails to argue or establish that the jurors were conversant based on everyday knowledge on the subject of the cause or means of death or that Dr. Rao's testimony failed to aid the jury on this subject. Rios has not established, therefore, that the average juror would be able to determine whether Valencia's wounds were consistent with application of the unilateral vascular neck restraint, being dragged on the ground, and having his throat cut while lying on the ground. *See Calhoun,* 259 S.W.3d at 59 (stating no plain error in allowing expert testimony where not evident or clear that the average person would be able to apply the generalized knowledge of gravity to the facts of the case and draw the same conclusions as the expert); *State v. Harris,* 305 S.W.3d 482, 491 (Mo.App. E.D. 2010) (stating expert testimony regarding amount of force required to inflict injuries such as those sustained by victim admissible as outside common experience of jurors and did not comment on defendant's responsibility for those injuries).

Rios relies on *State v. Clements,* 789 S.W.2d 101 (Mo.App. S.D.1990), for the proposition that a State's witness cannot be permitted to testify as to the ultimate issue of an element of the crime. *Clements* dealt with erroneous expert testimony opining about whether the defendant deliberated prior to committing his crime. *Id.* at 109–10. *Clements* is neither controlling nor persuasive. Dr. Rao offered no testimony suggesting that Rios was the person who engaged in the conduct which Dr. Rao affirmed could have been the means of Valencia's death. Therefore, Dr. Rao did not testify regarding an ultimate issue of an element of the offenses with which Rios was charged—i.e. whether Rios caused Valencia's death or knew his conduct was practically certain to cause Valencia's death. Consequently, Rios has not demonstrated any error associated with Dr. Rao's testimony. We thus decline to exercise plain error review. Point three is denied.

### Point IV

For his fourth and final point, Rios claims that the trial court plainly erred in failing to *sua sponte* declare a mistrial when Captain Monticelli testified that he asked Rios to submit to a polygraph examination. As this claim of error was not preserved at trial, the plain error standard

of review discussed in response to Rios's third point on appeal applies equally to our discussion of this point.

### Analysis

■■ On direct examination, the State elicited the following testimony from Captain Monticelli:

[THE STATE]: Was there any more conversation at that point or was it pretty well over?

[CAPT. MONTICELLI]: At that time, no. I escorted—I told them that we—we would get back with them on the second interview when we could set it up. [Rios] said that would be fine. I also asked him—I may be asking him to take a polygraph with the Missouri State Highway Patrol, and he told me there would be no problem with that.

After a few more questions, the trial court took a recess during which the following conversation took place outside the hearing of the jury:

THE COURT: I don't want to hear anymore about polygraphs.

[THE STATE]: I know, Your Honor.

THE COURT: Do you understand me?

[THE STATE]: I had met with him four years ago and told him don't mention it, and then I forgot to remind him again.

THE COURT: Let's don't talk about it again.

[DEFENSE COUNSEL]: Well, Your Honor, aren't I allowed to reaffirm my guy consented to it and I'm allowed—

THE COURT: If you want to bring it up, I don't care if you bring it up.

[DEFENSE COUNSEL]: Okay.

[THE STATE]: I apologize, Your Honor. I should have reminded him again.

THE COURT: But I don't want the State bringing it up anymore. I don't think—I mean, the way it came up—

[DEFENSE COUNSEL]: [The State] had no idea—I know he was caught by surprise too.

THE COURT: If you want to bring it up, that's your business. I wouldn't.

On cross-examination, defense counsel asked Captain Monticelli, "So essentially [Rios] consented to pretty much anything you asked of him? He consented to search of his house, search of his car. He did two CVSAs for you. He—he stripped down for Detective Lederle."

Rios never requested a mistrial, never asserted an objection, and never asked the trial court to instruct the jury to disregard Captain Monticelli's mention of the polygraph. To the contrary, it is clear from the record that Rios intended to use Captain Monticelli's inadvertent reference to the polygraph as an opening to elicit testimony to show that Rios was cooperative and complied with all requests. Notwithstanding this strategic decision, Rios now argues that he was irreparably prejudiced by Captain Monticelli's reference to the polygraph and that such prejudice could not be remediated, necessitating a mistrial. Rios contends that the trial court should have declared a mistrial *sua sponte*. We disagree.

■■ Polygraph examination *results* are inadmissible. *State v. Biddle*, 599 S.W.2d 182, 191 (Mo. banc 1980). However, the mere inadvertent reference to a polygraph examination does not by itself constitute prejudice warranting a mistrial. *See State v. Stewart*, 265 S.W.3d 309, 316 (Mo.App. S.D.2008) (finding that witness's confusion by question which resulted in inadvertent reference to polygraph did not constitute prejudice warranting a mistrial); *State v. Weston*, 912 S.W.2d 96, 101 (Mo. App. S.D.1995) (finding that no prejudice where police witness inadvertently referred to polygraph test when asked when

he got involved in the investigation); *State v. Williams*, 654 S.W.2d 215, 218 (Mo.App. E.D.1983) (finding that no prejudice where police officer refers to polygraph examination but not to results, and where no inference could be drawn as to whether defendant took, or refused to take, a polygraph examination).

Here, it is clear from the record that the State did not intend for Captain Monticelli to reference the polygraph examination. In addition, there was no reference to polygraph results. Finally, Rios does not contend that an inference could be drawn as to whether Rios took, or refused to take, a polygraph examination.[5]

Moreover, Rios did not object to, or seek any relief from, Captain Monticelli's testimony, opting instead to employ the strategy of converting the miscue into an opportunity to highlight Rios's cooperation with all requests made of him by the police. As such, Rios has waived plain error review. *See State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009) (concluding that plain error review is waived when defendant affirmatively makes strategic decision not to object to the admission of the statement or states that it has no objection; plain error review is only available where no objection is made due to inadvertence or negligence).

The trial court did not plainly err in failing to *sua sponte* declare a mistrial. Point four is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.

---

5. Rios contends only that the jury could have inferred that Captain Monticelli thought Rios was lying.